Dale KERZMANN, Plaintiff
and Appellee,

v.

Ray ROHWEDER, Defendant
and Appellant,

and

Darrel Rausch, Defendant.

Dale KERZMANN, Plaintiff
and Appellee,

v.

Ray ROHWEDER, Defendant,

and

Darrel Rausch, Defendant and Appellant.

Civ. 10141, Civ. 10168.

Supreme Court of North Dakota.

June 10, 1982.

Jos. A. Vogel, Jr., and Marvin M. Hager, of Vogel Law Firm, Mandan, for plaintiff and appellee Kerzmann; argued by Hager.

Gordon O. Hoberg, Napoleon, for defendant and appellant Rohweder.

Malcolm H. Brown, of Bair, Brown & Kautzmann, Mandan, for defendant and appellant Rausch.

VANDE WALLE, Justice.

Ray Rohweder and Darrel Rausch appealed from the order of the district court, McIntosh County, denying a motion for a new trial. Rohweder and Rausch [hereinafter referred to as "Rohweder"] moved for a new trial after judgment had been entered against them pursuant to a jury verdict. The basis of their motion was an affidavit signed by all the jurors that the jury's answers to questions on a special-verdict form did not reflect its true verdict. We affirm.

The action against Rohweder was based upon misrepresentation in the sale of livestock to Dale Kerzmann. The jury returned two verdicts. The first was the amount of damage Kerzmann suffered as a result of Rohweder's failure to obtain the required health certificate for the livestock. The jury determined that Kerzmann should be awarded $1,500. The damages award in the first verdict was against Ray Rohweder alone. No issue is raised as to the jury's decision in the first verdict.

The second verdict form utilized interrogatories, which required the jury to answer nine questions and, depending upon the answers, to determine the amount of damages. The questions, and the answers given by the jury, are as follows:

"1. Did the defendant, Ray Rohweder, induce the plaintiff to purchase cattle through the use of fraud or misrepresentation? Yes ✓ No____

"2. Did the defendant, Darrel Rausch, induce the plaintiff to purchase cattle through the use of fraud or misrepresentation? Yes ✓ No____

"(If the answer to either Question #1 or #2 is yes, answer Question #3. If both answers are no, sign and return your verdict.)

"3. Did the defendants, Rohweder and Rausch engage in a conspiracy, as defined in these instructions, to defraud the plaintiff? Yes____ No ✓

"4. Did the plaintiff suffer actual damages as a result of the action of Mr. Rohweder? Yes ✓ No____

"5. Did the plaintiff suffer actual damages as a result of the action of Mr. Rausch? Yes ✓ No____

"(If the answer to Questions 4 or 5 is yes, answer Question 6; otherwise return your verdict.)

"6. The amount of actual damages as defined at page 12 suffered by the plaintiff is the sum of $13,000.00.

"7. Interest is allowed on the damages at the legal rate? Yes____ No ✓ .

"8. If the answer to Questions #1 and #4 is yes, is the plaintiff entitled to exemplary damages against Ray Rohweder? Yes ✓ No____ If the answer is yes, in what amount? $13,000.00

"9. If the answer to Questions #2 and #5 is yes, is the plaintiff entitled to exemplary damages against Darrel Rausch? Yes____ No ✓ If answer is yes, in what amount? $_____ "

The second verdict awarded Kerzmann $13,000 against Rohweder and Rausch for actual damages and an additional $13,000 against Rohweder alone for exemplary damages. When the verdicts were read in court on October 28, 1981, neither Rohweder nor Rausch nor their attorneys were present. The jury was discharged without being polled.

Within a week after the trial a son of Ray Rohweder learned from one of the jurors that the intention of the jury was to award Kerzmann $13,000 against Ray Rohweder alone and not to award exemplary damages at all. Apparently the juror learned for the first time the effect of the verdict which had been returned. That juror then contacted Rohweder's attorney and told him he thought an error was made. Rohweder's attorney then contacted the foreman, who allegedly confirmed the first juror's conclusion. On November 2, 1981, the jury foreman held a meeting with the jury and the attorneys for both Rausch and Rohweder. At that meeting all six jurors signed the affidavit which was prepared by the attorney for either Rausch or Rohweder.[1] The affidavit stated that the verdict which was returned was not the intended verdict and that the returned verdict was incorrect due to mistake. The affidavit stated that the intent of the jury was to return the verdict as explained therein. The effect of the affidavit would have been to reduce the award to Kerzmann by $13,000 and would have freed Rausch of all liability.

Rohweder and Rausch filed a motion, based upon the affidavit, for a new trial pursuant to N.D.R.Civ.P. Rule 59(b)(1) and Rule 59(g).

Rule 59(b)(1) provides:

"(b) *Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"1. Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; . . ."

Rule 59(g) provides:

"(g) *Verdict Vacated by Court.* The verdict of a jury also may be vacated and a new trial granted by the court in which the action is pending on its own motion without the application of either of the parties, when there has been such plain disregard by the jury of the instructions of the court or of the evidence in the case as to satisfy the court that the verdict was rendered under a misapprehension of such instructions or under the influence of passion or prejudice."

The sole issue is whether or not the trial judge erred when he denied the motion for new trial.

The decision to grant or deny a new trial rests entirely within the discretion

---

1. The body of the affidavit reads:

"The undersigned, being sworn, state:

"1. They are the members of the jury that was impaneled to and did try the above-entitled case on October 27 and 28, 1981, in Ashley, North Dakota.

"2. The verdict so returned by the undersigned found as follows:

"a) For the Plaintiff and against the Defendant, Ray Rohweder, on Verdict # 1 in the amount of $1,500.00,

"b) For the Plaintiff and against the Defendants, Ray Rohweder and Darrel Rausch, on Verdict # 2 (general damages) in the amount of $13,000.00, and

"c) For the Plaintiff and against the Defendant, Ray Rohweder, on Verdict # 2 (exemplary damages) in the amount of $13,000.00,

"for a total verdict for the Plaintiff, Dale Kerzmann, of $27,500.00. Said verdict was not intended to be the verdict of the undersigned and was returned due to mistake.

"3. It was the intention of the undersigned to find for the Plaintiff, Dale Kerzmann, as follows:

"a) For the Plaintiff and against the Defendant, Ray Rohweder, on Verdict # 1 in the amount of $1,500.00,

"b) For the Plaintiff and against the Defendant, Ray Rohweder, on Verdict # 2 in the amount of $13,000.

"It was not the intention of the undersigned to award any verdict against the Defendant, Darrel Rausch, or to award to the Plaintiff, Dale Kerzmann, any amount greater than $13,000.00 on Verdict # 2."

of the trial court. Our standard of review on appeal from a denial of a new trial is limited to a determination of whether or not the trial court abused its discretion. An abuse of discretion in such a situation consists of an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 14 (N.D.1981).

■ We first address the applicability of Rule 59(g) to support a motion for a new

trial in this case. The trial court concluded that the requirements for relief under Rule 59(g) were not met. The trial judge concluded that there had not been "a plain disregard by the jury of the instructions of the Court or of the evidence in the case as to satisfy the Court that the verdict was rendered under a misapprehension of such instructions or under the influence of passion or prejudice."[2] We agree and are not persuaded that the trial court abused its discretion under Rule 59(g). The verdict

2. The instructions given clearly informed the jury what was required to determine liability, damages, exemplary damages, and the application to multiple defendants:

"FRAUD AND MISREPRESENTATION

"The plaintiff alleges fraud on the part of the defendants which induced him to enter into the contract for the purchase of the cattle. You are instructed that fraud within the meaning of North Dakota law consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

"3. The suppression of that which is true by one having knowledge or belief of the facts;

"4. A promise made without any intention of performing it; or

"5. Any other act fit to deceive.

"In order to constitute fraud, the act or promise must have been relied upon by the plaintiff and the act or promise must be material. An act or promise is material when it relates to some matter that is so substantial and important as to influence the party to whom it is made.

"In addition, the plaintiff must have been damaged by relying upon the act or promise.

"DAMAGES

"If, adhering to the Court's instructions, you find that the plaintiff is entitled to a verdict against the defendants, it will then be your duty to award the plaintiff such damages as you find proportionate to the detriment suffered by him.

"The question of damages is an entirely distinct and different question from the question of liability, and you must not consider the question of damages in this case until you have determined that the defendants are liable for the damages, if any, claimed by the plaintiff. That the Court gives instructions

on damages or that counsel for either party may have discussed the subject is not to be taken by you as any intimation by the Court or as any admission by such party of his liability for the damages claimed by the other party.

"The burden of proof with respect to damages rests upon the plaintiff and it is his duty to prove his damages by the greater weight of the evidence.

"EXEMPLARY DAMAGES

"If you determine that the plaintiff is entitled to actual damages because of the misrepresentations of the defendants, you may in addition to such actual damages determine whether damages known as exemplary damages for the sake of example and by way of punishing the defendant should be awarded to the plaintiff. In order to award such damages, however, you must find the defendants, or either of them, to be guilty of fraud or malice.

"The term 'malice' imports a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law. Malice may consist of a direct intention to injure another, or be in reckless disregard of his rights and the consequences that may result to him. Malice is not limited to a spiteful, malignant, or revengeful disposition and intent but includes wrongful and improper motives or intent to do a wrongful and improper act. When a wrongful or unlawful act is willfully or deliberately done, the law presumes that the act was done with unlawful intent and that the wrong was actuated by malicious motives.

"MULTIPLE DEFENDANTS

"Although there are two defendants in this action, it does not follow from that fact alone that if one is liable, both are liable. Each defendant is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact, if it should become a fact, that you find against the other. Unless otherwise stated, all instructions given you govern the case as to each defendant."

itself does not contain anything which indicates that the jury misunderstood or disregarded the instructions or that its verdict was influenced by passion or prejudice. Assuming, without deciding, that we may consider the contents of the jury's affidavit, it does not contain any evidence that the jury misunderstood or disregarded the instructions nor that the verdict was due to passion or prejudice. The answer contained in the special verdict conformed to the evidence and the instructions.

Rohweder also argues that Rule 59(b)(1) is applicable. Rohweder attempted to use an affidavit signed by the jury to "correct" an allegedly erroneously transcribed verdict. In *Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964), the appellants argued that the jury was guilty of misconduct when it returned a general verdict. The basis for the argument was twelve affidavits signed by each member of the jury stating that it awarded the plaintiff damages even though it did not find the defendant guilty of gross negligence, as required under our previous guest statute. Clearly, the appellant in *Grenz* was attempting to impeach the jury's verdict through the use of affidavits from the jurors. The attempt in *Grenz* was made pursuant to Rule 59(b)(2).[3] In *Grenz*, this court interpreted Rule 59(b)(2) to permit the use of juror affidavits for the impeachment of the verdict only in cases where the jury's determination was arrived at by chance. *Grenz*, 129 N.W.2d at 692. As in *Grenz*, the affidavit in the instant case establishes "beyond controversy that the jury did not arrive at its verdict . . . by chance." *Grenz*, 129 N.W.2d at 692. In *Grenz* the court then turned to the question "should the jurors be permitted to impeach their verdict, by their affidavits, where the facts sought to be shown inhere in the verdict itself?" *Grenz*, 129 N.W.2d at 692.

The court decided, primarily due to policy reasons, that juror affidavits "cannot be used or considered by the court to impeach their verdict or as a ground for a new trial." *Grenz*, 129 N.W.2d at 693. The court in *Grenz* affirmed the policies as set forth in *State v. Forrester*, 14 N.D. 335, 103 N.W. 625, 626:

> "It would greatly tend to unsettle verdicts if a juror be permitted to say, after it is too late to be remedied, that he did not understand the charge of the court. To do so would result in continual embarrassment and interminable controversy after trials, although a verdict had been duly and solemnly announced. It would subject jurors to constant annoyance by being called upon to state the occurrences of the jury room, which ought to be kept secret as well as privileged. It would subject jurors to influences by corrupt parties in an effort to have them impair their verdict after they had ceased to act as jurors. Although injustice may at times result from thus holding verdicts solemnly rendered unassailable by affidavits of jurors as to their not understanding the charge or as to their reasons for agreements, we deem it the better rule, and subject to less liability to injustice, that a verdict actually rendered shall be conclusively deemed to be a verdict, and beyond impeachment by the declaration of a juror as to a mental condition existing when he agreed upon a verdict, or as to his reasons for so agreeing." Quoted in *Grenz*, 129 N.W.2d at 692.

To distinguish the rule in *Grenz*, Rohweder argues that there is an exception to the general rule as stated in *Grenz*: that affidavits of the jury may be permitted to prove that through mistake the verdict has not been correctly expressed.[4] Rohweder

---

**3.** Rule 59(b)(2), N.D.R.Civ.P., permits the granting of a new trial due to:

> "2. Misconduct of the jury, and whenever any juror has been induced to assent to any general or special verdict or to a finding on any question submitted to the jurors, by the court by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors; . . ."

**4.** See 18 A.L.R.3d 1132, "Competency of juror's statements or affidavit to show the verdict in civil case was not correctly recorded." There is a split of authority among the States which have considered the issue. Wisconsin and Illinois are examples of jurisdictions which have adopted a restrictive rule concerning the use of juror affidavits to correct an erroneously re-

argues that he is not attempting to impeach the jury's verdict, as was attempted in *Grenz*, only that he is attempting to establish what the correct verdict actually was. He concedes that the verdict was proper, but that the true intent of the jury was not reflected in the answers on the special-verdict form. Rohweder does not argue that misconduct occurred.

For reasons hereinafter discussed, the facts in this case do not present a proper situation in which to examine this court's ruling in the case of *Grenz v. Werre*, which narrowly interpreted Rule 59(b)(2) and the use of juror affidavits. Nor does this case permit us to decide whether or not it is time to re-examine the policy reasons which are protected by the prohibition on the use of juror affidavits to either impeach a verdict due to juror misconduct or outside influence or to attempt to correct an erroneous recordation of the jury's oral verdict. The instant case may be resolved solely by determining if the trial judge exercised his dis-

cretion in denying the motion. If he did exercise his discretion we must then determine whether or not he abused his discretion. In the instant case, our analysis includes an evaluation of Rohweder's claim that Rule 59(b)(1) supports his motion to determine whether or not the trial judge abused his discretion.

■ According to the trial judge's opinion from the bench and the written order denying the motion, it appears that the trial judge decided the question assuming alternatively that *Grenz* did not apply and that *Grenz* did apply. The trial judge ruled that "the Affidavit submitted by the Defendants and signed by the members of the jury does not show any irregularity in the proceedings of the jury nor any misconduct ..." The trial judge also ruled, assuming that *Grenz* disallowed the use of jury verdicts in this instance: "it would be error to overturn the jury verdict based upon existing

corded verdict. See *Ford Motor Credit Co. v. Amodt*, 29 Wis.2d 441, 139 N.W.2d 6 (1966), wherein the court reversed its previous position permitting the use of juror affidavits and held that the jury is not permitted to initiate a challenge to its verdict after the jury has returned its verdict and has been discharged; and *Chalmers v. City of Chicago*, 92 Ill.App.3d 54, 415 N.E.2d 508, 47 Ill.Dec. 503 (1980), which held that a prohibition against the use of affidavits to assert an allegedly erroneous recordation is in the public's interest. The rule in New York appears to be the opposite. *Rose v. Thau*, 357 N.Y.S.2d 201, 45 App.Div.2d 182 (1974) [generally, evidence by all the members of a jury is competent to show that a verdict was incorrectly recorded by mistake]; and *Pache v. Boehm*, 401 N.Y.S.2d 260, 60 App.Div.2d 867 (1978) [where errors are made in reporting a verdict, the trial judge may, in his discretion and upon the unanimous affidavits or statements of the jurors, correct the judgment in accordance with the actual verdict]. At one time California, as in this court's decision in *Grenz*, permitted the use of juror affidavits only to show that the jury resorted to chance to arrive at the verdict. The rule now is that jurors are competent witnesses to prove objective facts to impeach a verdict [*People v. Hutchinson*, 71 Cal.2d 342, 78 Cal.Rptr. 196, 455 P.2d 132 (1969), and *People v. Hall*, 108 Cal.App.3d 373, 166 Cal.Rptr. 578 (1980)], or to show that a verdict was erroneously recorded [*People v. Petti*, 122 Cal.App.3d 707, 176 Cal.Rptr. 204 (1981)]. Juror affidavits in California are permitted only if they show overt

conduct, conditions, events, and statements which are objectively ascertainable and do more than characterize a juror's own state of mind or the states of mind of other members of a jury. The affidavits may not be used to show the effect of such events upon the jury. See *Wright v. Illinois and Mississippi Telegraph Co.*, 20 Iowa 195 (1866) [juror affidavits will be admitted as to facts that do not inhere in the verdict], cited in *Pittsburgh Nat. Bank v. Mut. Life*, 493 Pa. 96, 425 A.2d 383 (1981); and *Woodward v. Leavitt*, 107 Mass. 453 (1871) [juror testimony is admissible to demonstrate the existence of objective, provable, extraneous, disturbing influences but not to demonstrate the effect of the disturbing influences upon the jury's verdict], cited in *Commonwealth v. Fidler*, 377 Mass. 192, 385 N.E.2d 513 (1979). Minnesota's position is somewhat different. Rather than adopting a rule that the jury is or is not able to impeach the verdict due to misconduct or mistake, the court has developed what is called a "Schwartz" hearing. When questions arise about jury misconduct the matter must be brought to the attention of the trial court. If it appears to the trial judge that the facts require it, he may summon the juror or jurors to appear before him and permit an examination in the presence of counsel. *Schwartz v. Minneapolis Suburban Bus Company*, 258 Minn. 325, 104 N.W.2d 301 (1960); *Zimmerman v. Witte Transp. Co.*, 259 N.W.2d 260 (Minn.1977).

law by the use of an outside Affidavit." We decide that the trial judge did exercise his discretion when ruling on the motion for a new trial.

Did the trial judge abuse his discretion? The affidavit states that the jury did not intend to award damages against Rausch nor exemplary damages against Rohweder. However, the questions in the verdict form are clear, the issues contained in the questions are spelled out in the jury instructions, and counsel for Kerzmann questioned the jurors on voir dire about awarding exemplary damages. In his closing statement counsel for Kerzmann again discussed awarding exemplary damages and even suggested basing the exemplary-damages award upon the amount awarded as actual damages.

The affidavit contains only the conclusions by the jurors that they did not intend to award the damages which were indicated on the verdict form. Yet in their answers to the special-verdict questions they indicated that:

—Rausch induced Kerzmann to purchase the cattle through fraud or misrepresentation.

—Kerzmann suffered actual damage as a result of the action of Rausch.

—Rohweder induced Kerzmann to purchase the cattle through fraud or misrepresentation.

—Kerzmann suffered actual damage as a result of the action of Rohweder.

—The amount of actual damage suffered by Kerzmann was $13,000.

■ These answers indicate the jury's conclusion that on the individual issues of liability and the existence of damage both Rohweder and Rausch were liable and caused actual damage to Kerzmann. The jury affidavit, however, states that it was not its intention to hold Rausch liable. Even if we were to conclude that the jury's verdict was erroneously recorded, the effect of the jury's affidavit is to *impeach* the remainder of the verdict. As explained below, the jury answered in the negative the question as to Rausch's liability for exem-

plary damages. However, in order to consider that question it first must have found Rausch liable for actual damage. In its affidavit, though, the jury claims to have intended that Rausch not be liable for actual damage.

The remaining answers on the special-verdict form reveal further inconsistencies between the result of the jury affidavit and the verdict:

—Once Rohweder was found liable and also to have caused actual damage the jury answered that Kerzmann was entitled to exemplary damages.

—The jury listed $13,000 in the space provided for the amount of exemplary damages to which Kerzmann was entitled from Rohweder.

—Although the jury found Rausch liable and to have caused actual damage it answered that Kerzmann was not entitled to exemplary damages against Rausch.

It is difficult to understand the jurors' affidavit to the effect that their oral conclusions were erroneously recorded. We believe that the trial judge expressed the better explanation for the contradiction between the jury verdict and the affidavit: "[The jurors] may have not understood the ramifications of their answers to the questions, . . ." This case illustrates the advantage of special over general verdicts. General verdicts permit the jurors to vote their instinctive reaction to a set of facts. The special verdicts used here required the jury to answer questions on liability, the existence of actual and exemplary damages, and the amount of damages. Through the use of a special verdict the jury was used more completely in its function as fact-finder.

■ After analyzing the jury affidavit and the verdict we cannot conclude that the trial judge abused his discretion when he denied the motion for new trial. Because we do not believe that this is a proper case for reviewing the ruling in *Grenz* we make no comment upon the trial judge's decision that *Grenz* does apply. We do note, however, that subsequent to the adoption of

Rule 606(b), N.D.R.Ev., we no longer can rely solely upon Rule 59(b) to evaluate the arguments made here. Rule 606(b), N.D.R. Ev., states:

"(b) *Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

Rule 606(b) was adopted virtually verbatim from the Federal Rules of Evidence, Rule 606(b). The Advisory Committee Notes to Rule 606(b), F.R.Evid., indicate that the "rule does not purport to specify the substantive grounds for setting aside verdicts for irregularity; it deals only with the competency of jurors to testify concerning those grounds." Reading Rule 59(b), N.D. R.Civ.P., and Rule 606(b), N.D.R.Ev., together, we conclude that Rule 59(b) lists only the causes for which a new trial may be granted. Rule 606(b) sets forth the circumstances when a juror is competent as a witness when an inquiry is made into the verdict. The portion of Rule 606(b) which is relevant here permits a juror to testify as to "whether extraneous prejudicial information was improperly brought to the jury's attention, [or] whether any outside influence was improperly brought to bear upon any juror, ..." Rule 606(b). These items are similar to the California rule that a juror may testify to overt acts, conduct, events, and statements that are objectively ascertainable. *People v. Hutchinson,* 71 Cal.2d 342, 78 Cal.Rptr. 196, 455 P.2d 132 (1969). Rule 606(b) does not permit a juror to testify "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions ..." Rule 606(b). These items are similar to the California rule that prohibits a juror from testifying to the subjective reasoning processes of the juror. *Hutchinson, supra.*

We do not decide in this appeal whether or not the language in Rule 606(b) overrules or modifies the language in *Grenz,* which prohibited juror affidavits except to show that the verdict was arrived at by chance. Because we do not believe that the trial judge abused his discretion when he denied the motion for a new trial, we affirm the judgment of the trial court.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.