Kathleen MAUCH and Harold Mauch, Plaintiffs, Appellees, and Cross-Appellants,

v.

MANUFACTURERS SALES & SERVICE, INC., a foreign corporation, Defendant, Appellant, Cross-Appellee, and Third-Party Plaintiff,

and

Amalgamated Cordage Corp., a foreign corporation, Dixie Industries, Inc., a foreign corporation, and Farm and Home Supply, Inc., Defendants and Third-Party Defendants.

Civ. No. 10431.

Supreme Court of North Dakota.

Feb. 2, 1984.

Robert P. Bennett, of Kelsch, Kelsch, Bennett, Ruff & Austin, Bismarck, for plaintiffs, appellees, and cross-appellants.

Leonard H. Bucklin, of Zuger & Bucklin, Bismarck, for defendant, appellant, and cross-appellee.

VANDE WALLE, Justice.

Kathleen Mauch was injured while using a "Mr. Big Tow" nylon rope, manufactured by the defendant, Manufacturers Sales & Service, Inc. ("Manufacturers"), to pull-start one tractor with another on the Mauchs' farm. Kathleen was driving the pulling tractor when the hook attached to the other tractor broke. The nylon rope instantly recoiled towards Kathleen's tractor hurling the broken hook which was still attached to it through the tractor cab window striking Kathleen and injuring her seriously.

Kathleen and her husband, Harold, sued Manufacturers on theories of negligence and strict products liability. The Mauchs asserted that Manufacturers negligently breached a duty to warn Kathleen that nylon rope when stretched and then re-leased may recoil with tremendous force. The Mauchs also asserted that the nylon rope, because it was sold without an adequate warning of its dangerous recoil propensities, was in a defective and unreasonably dangerous condition; that the lack of adequate warning caused Kathleen's injuries; and that Manufacturers should be held strictly liable. Manufacturers asserted as a defense at the trial that Kathleen's injuries were proximately caused by her own negligent use of the tow rope. In support of that assertion, it introduced evidence that the hook broke and recoiled toward Kathleen's tractor cab because she had attached the rope to the tractor being pulled by placing the hook into a hole located on the drawbar instead of properly inserting the hook into a clevis and drawpin arrangement.

The trial court, concluding that the differences between the strict liability and negligence theories of recovery in this case were imperceptible, refused to instruct the jury on strict liability, and the case was submitted solely on the Mauchs' negligence theory. The jury returned a special verdict by which it found that the proximate cause of Kathleen's injuries was 50 percent attributable to Manufacturers' negligence and 50 percent attributable to Kathleen's negligence. The district court, properly applying the jury's findings to our comparative-negligence law, Section 9–10–07, N.D. C.C., determined that because Kathleen's negligence was as great as Manufacturers' negligence she was not entitled to recover any damages, and the court entered judgment accordingly.

Thereafter, the Mauchs filed a motion for new trial under Rule 59, N.D.R.Civ.P., by which they raised numerous grounds for their request. On February 22, 1983, the district court entered an order granting the Mauchs a new trial on the ground that there had been an irregularity in the jury proceedings because the jury had disregarded the instructions of the court. Manufacturers has appealed from that order granting the Mauchs a new trial, and the Mauchs have filed an appeal from the judg-

ment and a cross-appeal from the order granting a new trial through which they assert that the court erred in refusing to base its grant of a new trial on several of the grounds raised by them. We reverse the judgment and the court's order granting the Mauchs a new trial on their negligence action, and we remand this case for a new trial solely on the Mauchs' cause of action in strict products liability.

In disposing of this case, we find it necessary to resolve the following issues:

(1) Whether or not the district court erred in granting the Mauchs a new trial on the ground that there was irregularity in the jury proceedings whereby the jury disregarded the instructions given to it by the court.

(2) Whether or not the district court erred in refusing to grant the Mauchs a new trial on the ground that there was insufficient evidence to support the jury verdict.

(3) Whether or not the district court erred in refusing to grant the Mauchs a new trial on the ground that the court's application of our comparative-negligence law, Section 9–10–07, N.D.C.C., to this case violated the Mauchs' equal-protection and due-process rights under the Federal and State Constitutions.

(4) Whether or not the district court erred in refusing to instruct the jury on a strict products-liability theory of recovery.

(5) Whether or not the plaintiffs' negligence is a defense to a strict products-liability claim.

(6) Whether or not the district court erred in denying certain expert witness fees and other costs requested by Manufacturers.

■ Manufacturers asserts that the district court erred in granting the Mauchs a new trial on the ground that there was irregularity in the jury proceedings because the jury disregarded the instructions given to it by the court. The decision to grant or deny a new trial rests within the discretion of the trial court and will not be set aside on appeal unless a manifest abuse of discretion is shown. *Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977). We conclude that the district court abused its discretion in granting the Mauchs a new trial on their negligence claim against Manufacturers.

Through its special verdict, the jury found that Manufacturers' negligent conduct and Kathleen's negligent conduct each contributed 50 percent toward the proximate causation of Kathleen's injuries. Under the last special-verdict question, the jury was requested to determine the total damages "as defined in these instructions." The jury had been instructed to determine the amount of the plaintiffs' damages in dollars "without diminution for negligence." The jury answered the special-verdict question inserting $230,000 damages for Kathleen and $15,400 damages for Harold. Because the jury found Kathleen's negligence was as great as Manufacturers', the Mauchs were not entitled to any recovery against Manufacturers, and judgment was entered accordingly.

Subsequent to entry of the judgment in this case, all the jurors signed affidavits stating that the jury had decided that Kathleen's negligence "was not as great as that of Manufacturers ..." and further stating that the jury had intended that the Mauchs would actually receive the amount of damages inserted in the special-verdict form. One of the jurors also published an article in The Bismarck Tribune revealing that the jurors' intentions were substantially those that had been revealed in the juror affidavits. On the basis of the juror affidavits and the published article, the district court made the following determination, as revealed by its memorandum decision dated February 22, 1983:

"Had the jury apprehended the instructions and the result of their verdict in this case, it is the Court's opinion that it would have changed its findings and that they corrupted their verdict by failing to follow the instructions that this Court gave them. It is my opinion that the jury first determined the result and then

proceeded to work backwards. They failed to follow the instructions regarding how they should proceed in determining damages only after they determined liability. This Court believes that the jury did one before the other in a reverse way."

Concluding that there had been irregularity in the jury proceedings by the jury's failure to follow the court's instructions, the district court granted the Mauchs a new trial on their negligence claim under Rule 59, N.D.R.Civ.P.

■ It is improper for a court to consider juror affidavits for purposes of impeaching a verdict relative to the mental processes or reasoning of the jurors in arriving at a decision. *Keyes v. Amundson*, 343 N.W.2d 78 (N.D.1983); *State v. Bergeron*, 340 N.W.2d 51 (N.D.1983); *Kerzmann v. Rohweder*, 321 N.W.2d 84 (N.D.1982); *Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964). It is also improper to use juror affidavits to show that the jurors misconceived the legal consequences of their factual findings or the ramifications of their answers to special-verdict questions. See *Kerzmann v. Rohweder, supra; Gardner v. Germain*, 264 Minn. 61, 117 N.W.2d 759 (1962); *Bauer v. Kummer*, 244 Minn. 488, 70 N.W.2d 273 (1955).

In *Grenz, supra*, 129 N.W.2d at 692, we quoted, in relevant part, *State v. Forrester*, 14 N.D. 335, 338, 103 N.W. 625, 626 (1905):

"It would greatly tend to unsettle verdicts if a juror be permitted to say, after it is too late to be remedied, that he did not understand the charge of the court. To do so would result in continual embarrassment and interminable controversy after trials, although a verdict had been duly and solemnly announced. It would subject jurors to constant annoyance by being called upon to state the occurrences of the jury room, which ought to be kept secret as well as privileged. It would subject jurors to influences by corrupt parties in an effort to have them impair their verdict after they had ceased to act as jurors. Although injustice may at times result from thus holding ver-

dicts solemnly rendered unassailable by affidavits of jurors as to their not understanding the charge or as to their reasons for agreements, we deem it the better rule, and subject to less liability to injustice, that a verdict actually rendered shall be conclusively deemed to be a verdict, and beyond impeachment by the declaration of a juror as to a mental condition existing when he agreed upon a verdict, or as to his reasons for so agreeing."

Subsequent to our decision in *Grenz, supra*, we adopted Rule 606(b), N.D.R.Ev., which provides that when there is an inquiry into the validity of a verdict a juror may testify only as to "whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance." See *Keyes v. Amundson, supra*.

In this case, the jurors' statements were used to demonstrate that the jury intended a result other than the one which a proper application of the jury's findings to our law would require. Although the jury expressly found by its special verdict that Manufacturers' negligence and Kathleen's negligence contributed equally (i.e., 50 percent) to Kathleen's injuries, the jurors' subsequent affidavits were used to show the jury intended that Kathleen nevertheless should recover the amount of damages entered on the special-verdict form. Our law does not allow for such a result. The jury's findings were properly applied to our law by the district court when it entered a judgment awarding Kathleen and Harold no damages because Kathleen's negligence was as great as Manufacturers'.

■ We conclude that the district court abused its discretion in granting a new trial by impermissibly relying upon written statements and affidavits of the jurors to, in effect, impeach the jury's verdict. Accordingly, we reverse the district court's grant of a new trial to the Mauchs on their negligence claim against Manufacturers.

On their cross-appeal, the Mauchs assert that the district court erred in refusing to grant them a new trial on the ground that there was insufficient evidence to support the jury finding that Kathleen's negligence was 50 percent of the proximate cause of her accident and injuries. The trial court cannot grant a new trial merely because it disagrees with the jury's verdict when the evidence is nearly balanced or where different minds could reach different conclusions; to set aside a jury verdict and grant a new trial, the trial court must find the verdict to be manifestly against the weight of the evidence. *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979). On appeal, we review the evidence in the light most favorable to the verdict, and the trial court's refusal to grant a new trial based upon insufficiency of the evidence will not be disturbed unless a manifest abuse of discretion is shown. See *Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71 (N.D.1981).

At the trial, the Mauchs attempted to prove that Manufacturers' failure to warn users of the recoil propensities of nylon rope was the sole proximate cause of Kathleen's injuries. Manufacturers introduced evidence to prove that Kathleen's failure to properly fasten the nylon rope hook on the tractor drawbar was the reason that the hook broke and the reason that the rope recoiled in the direction of Kathleen's tractor cab. In its memorandum opinion regarding the motion for new trial, the district court stated:

"This Court finds nothing in the record that would restrict the jury from finding either the Plaintiff 100% liable or the Defendant 100% liable. The jury could have found, had they desired, that Mrs. Mauch did understand or should have understood the dangers she was facing and, by the same token, I think they could have found Manufacturers Sales & Service totally liable. Manufacturers Sales & Service had a duty to warn of the danger Mrs. Mauch was facing and should have warned of such danger because no one would think of this danger unless reminded at the time when they were using the product."

We conclude from the record that there was substantial evidence to support the jury's finding that Kathleen's negligence was a 50 percent proximate cause of her accident and injuries. Accordingly, we hold that the district court did not abuse its discretion in refusing to grant a new trial on the basis of insufficient evidence.

Through their cross-appeal, the Mauchs also assert that our comparative-negligence law, Section 9–10–07, N.D.C.C., violates their equal-protection and due-process rights under the Federal and State Constitutions, because under that statute recovery is denied to a plaintiff whose negligence is as great as the negligence of the person against whom recovery is sought. The Mauchs have cited no case decision or other authority in support of their attack on the constitutionality of Section 9–10–07, N.D.C.C. In *Southern Valley Grain Dealers Association v. Board of County Commissioners*, 257 N.W.2d 425, 434 (N.D. 1977), we stated in relevant part:

"One who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely."

See also *Jones v. North Dakota Workmen's Compensation Bureau*, 334 N.W.2d 188 (N.D.1983). Although we believe the Mauchs have not adequately raised this constitutional issue, we will comment briefly.

Section 9–10–07, N.D.C.C., must be upheld as not violative of the Mauchs' equal-protection rights if the classification it draws is not patently arbitrary so as to constitute invidious discrimination and if it is rationally related to a legitimate government interest. See *Rothe v. S–N–Go Stores, Inc.*, 308 N.W.2d 872 (N.D.1981). Prior to the enactment of Section 9–10–07, N.D.C.C., this State recognized the defense of contributory negligence whereby a plaintiff was denied recovery for injuries caused by a defendant's negligence if the plaintiff's injuries were proximately caused, to

any extent, by the plaintiff's contributory negligence. In an obvious attempt to temper the harshness of that defense for plaintiffs, the Legislature enacted Section 9–10–07, N.D.C.C., to allow contributorily negligent plaintiffs to recover a reduced amount of damages, instead of no damages at all, provided the plaintiff's contributory negligence was not so great as the defendant's negligence. We believe that Section 9–10–07, N.D.C.C., is rationally related to a legitimate government objective and does not constitute invidious discrimination.

The district court instructed the jury on the Mauchs' negligence theory but refused to instruct on their strict-liability theory on the ground that, in a failure-to-warn case such as this, the two theories are indistinguishable and instructing on both would serve only to confuse the jury. On appeal, the Mauchs assert that the district court erred in refusing to instruct the jury on their strict-liability theory. We agree.

■ Although the authorities disagree over this issue, we believe that recovery sought under a negligent failure-to-warn theory and recovery sought under a products-liability theory of marketing a product which is defective and unreasonably dangerous because it is not accompanied by adequate warnings are two separate and distinct theories of recovery. Thus the trial court must instruct on each where there is evidence to support both theories. See *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 432 A.2d 925 (1981); *Little v. PPG Industries, Inc.*, 92 Wash.2d 118, 594 P.2d 911 (1979); *Hamilton v. Hardy*, 37 Colo.Ct.App. 375, 549 P.2d 1099 (1976); *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975); *Jackson v. Coast Paint and Lacquer Compa-*

*ny*, 499 F.2d 809 (9th Cir.1974); *but see, Smith v. E.R. Squibb & Sons, Inc.*, 405 Mich. 79, 273 N.W.2d 476 (1979).

In *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974), this court expressly adopted *Restatement (Second) Torts*, § 402A.[1] One of the policies behind the development of the products-liability theory of recovery is succinctly explained in *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 93, 337 A.2d 893, 898 (1975),

> "The law of products liability developed in response to changing societal concerns over the relationship between the consumer and the seller of a product. The increasing complexity of the manufacturing and distributional process placed upon the injured plaintiff a nearly impossible burden of proving negligence where, for policy reasons, it was felt that a seller should be responsible for injuries caused by defects in his products."

■ This court, in *Olson v. A.W. Chesterton Company*, 256 N.W.2d 530 (N.D. 1977), recognized that under *Restatement (Second) Torts*, § 402A, one who manufactures or sells a product has a duty to warn of dangers inherent in its intended use and also to warn of dangers involved in a use which can be reasonably anticipated. Thus a manufacturer or seller can be held liable under a products-liability theory for selling a product which, although meeting every requirement for its designed utility and although properly manufactured, is marketed without adequate warnings to make the product free from unreasonable danger to the user. See *Jackson v. Coast Paint and Lacquer Company*, 499 F.2d 809 (9th Cir.1974).

---

1. Section 402A reads:

 "§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

 "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 "(a) the seller is engaged in the business of selling such a product, and

 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

 "(2) The rule stated in Subsection (1) applies although

 "(a) the seller has exercised all possible care in the preparation and sale of his product, and

 "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

With regard to this issue, Frumer and Friedman, *Products Liability,* § 16A[4][f] at 3B–156 (1983), state in relevant part:

"While the distinction drawn between a negligent failure to warn and the warning requirements for strict tort purposes might seem illusive, and this has been so stated by some courts, it is nonetheless quite significant because it clearly points out the different bases for the two theories. Under the strict tort doctrine the emphasis is on the product and the danger it poses to the public, while under the negligence concept the emphasis is on the reasonableness of the conduct of the manufacturer. The degree of care exercised by the manufacturer is irrelevant for strict tort purposes."

Under a negligence theory, the question is whether or not the conduct of the manufacturer or seller in providing a certain warning with its product, or in providing no warning at all, falls above or below the standard of reasonable care. Under a products-liability theory, the question is whether or not the warnings, if any, which accompany a product are adequate to render the product not unreasonably dangerous to the ordinary user of it. Under the latter theory, the reasonableness of the defendant's conduct is not at issue. Thus the products-liability theory shifts the focus from the defendant's conduct to the nature of the product:

"[T]he objective of the rule of strict liability with respect to dangerous products is defeated if a plaintiff is required to prove that the defendant was negligent, or the latter is allowed to defend upon the ground that he was free of negligence. It is the adequacy of the warning which is given, or the necessity of such a warning, which must command the jury's attention, not the defendant's conduct." *Little v. PPG Industries, Inc.,* 92 Wash.2d 118, 121, 594 P.2d 911, 914 (1979).

We conclude that the trial court erred in refusing to instruct on the Mauchs' products-liability theory of recovery in this case. If the jurors had been given a products-liability instruction, they might have found that the "Mr. Big Tow" nylon rope was not accompanied by adequate warnings regarding its recoil propensities and was therefore in a defective and unreasonably dangerous condition to the user or consumer.

Manufacturers asserts that the district court's failure to give a products-liability instruction does not require a reversal of the judgment because the jury found that Kathleen's contributory negligence was 50 percent of the proximate cause of her alleged injuries. In view of that finding, Manufacturers asserts, the Mauchs would not be entitled to recover any damages under either a negligence or a products-liability theory. To resolve this issue it is necessary for us to discuss the defenses that are available in a products-liability action, and in that context, to determine whether or not a plaintiff's negligence is a defense.

In *Olson v. A.W. Chesterton Company,* 256 N.W.2d 530 (N.D.1977), we recognized unforeseeable misuse and assumption of risk as defenses in a products-liability action under *Restatement (Second) Torts,* § 402A. However, we were not required to determine in *Olson, supra,* whether or not a plaintiff's ordinary negligence is a defense in such an action.

There is disagreement among the courts as to whether or not the plaintiff's negligence, in the sense of a failure to exercise ordinary care for one's own safety, constitutes a defense in a products-liability action as is indicated by the summary statement of the Annotation, *Strict Products Liability-Defenses,* 46 A.L.R.3d 240, 244 (1972):

"Among the cases within the scope of this annotation, there is general agreement that contributory negligence in the sense of a failure to discover or guard against product defects is not a defense to an action based upon strict products liability in tort, but that assumption of risk does constitute a defense. A more contested issue is whether contributory negligence in the broader sense, that of a

failure to exercise ordinary care for one's own safety, will constitute a defense in a strict products liability action." [Footnotes omitted.]

 We believe the better rationale, and the one we choose to follow in this case, is that the plaintiff's conduct should not be scrutinized in ordinary "contributory negligence" terminology as a defense to a products-liability claim. The focus of a products-liability action is on whether or not the product is defective and unreasonably dangerous, and thus the reasonableness of the defendant's conduct under negligence concepts is not relevant to this action. The defenses which we have previously recognized in *Chesterton, supra,* of assumption of risk and unforeseeable misuse are, in our opinion, adequate to protect a seller or manufacturer from unjust liability in a case of this type. We find support for this position in the comments to *Restatement (Second) Torts,* § 402A, and in the case decisions of a number of jurisdictions: *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979); *General Motors Corporation v. Hopkins,* 548 S.W.2d 344 (Tex.1977) [possibly overruled on another point irrelevant to this case in *Turner v. General Motors Corporation,* 584 S.W.2d 844 (Tex.1979)]; *Sun Valley Airlines, Inc. v. Avco-Lycoming Corporation,* 411 F.Supp. 598 (D.Idaho 1976); *Berkebile v. Brantly Helicopter Corporation,* 462 Pa. 83, 337 A.2d 893 (1975); *McCarty v. F.C. Kingston Company,* 22 Ariz.App. 17, 522 P.2d 778 (1974); *Hawkeye Security Insurance Company v. Ford Motor Company,* 199 N.W.2d 373 (Iowa 1972).

Comment n. to Section 402A, *Restatement (Second) Torts,* reads:

"n. *Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

The defenses of assumption of the risk and product misuse focus, as does the products-liability claim itself, upon the nature of the product and its use. We believe that the interjection of ordinary contributory negligence principles would only serve as a diversion from the proper focus on the product and its use in such a case without providing any needed additional protection to the defendant seller or manufacturer which the defenses of assumption of risk and unforeseeable misuse of the product do not already provide.

 Although we conclude that a plaintiff's ordinary contributory negligence, by that label, is not a defense in a products-liability action, we emphasize for clarity that a seller can be held liable under *Restatement (Second) Torts,* § 402A, only where it is proved that an unreasonably dangerous defective condition of the product was a proximate cause of the plaintiff's injuries. The plaintiff must prove proximate causation, and if the plaintiff's injuries are caused solely by his own acts, negligent or otherwise, or by other means unrelated to the defective condition of the product, the seller cannot be held liable under a products-liability theory. See comments g. and h. to Section 402A, *Restatement (Second) Torts.*

 Because an action in products liability was adopted by this court under *Restatement (Second) Torts,* § 402A, and because ordinary contributory negligence principles are not relevant to this type of action, we conclude that the comparative-negligence provisions under Section 9–10–

07, N.D.C.C., are not applicable.[2] However, in view of the Legislature's acceptance of comparative-negligence principles as demonstrated by its enactment of Section 9–10–07, N.D.C.C., and in following a course which we believe is most fair and just to all parties, we hold that where an unreasonably dangerous defect of a product and the plaintiff's assumption of risk or unforeseeable misuse of the product are concurring proximate causes of the injury suffered, the trier of fact must compare those concurring causes to determine the respective percentages by which each contributed. See *General Motors Corporation v. Hopkins,* 548 S.W.2d 344 (Tex.1977) [possibly overruled on another point irrelevant to this case in *Turner v. General Motors Corporation,* 584 S.W.2d 844 (Tex. 1979)]. See also *Sun Valley Airlines, Inc. v. Avco-Lycoming Corporation,* 411 F.Supp. 598 (D.Idaho 1976). We further hold that the comparison of causations under a products-liability claim should be on a pure comparative-causation basis, unlike the statutory scheme of modified comparative negligence under Section 9–10–07, N.D.C.C. Thus the plaintiff's misuse of the product will reduce the recovery by the percentage of damage attributable to the misuse but, even though equal to or great-

er than the causation attributable to the defective condition of the product, will not act as a total bar to the plaintiff's claim. We reached a similar conclusion today in *Day v. General Motors,* 345 N.W.2d 349 (N.D.1984).

▮▮▮▮▮ To summarize, we recognize the defense of assumption of risk—the seller has a reduced liability to one who is aware that a product is defective and unreasonably dangerous, has a reasonable opportunity to choose whether or not to expose himself to the danger, and voluntarily proceeds to use the product. We also recognize the defense of unforeseeable misuse—the seller's liability is reduced where the plaintiff misuses the product in a manner for which the seller could not be expected to anticipate or provide in the manufacture or sale of the product and where the misuse is a proximate cause of the damages sustained. When the defenses of assumption of risk and unforeseeable misuse are raised in the context of a strict products-liability action, the trier of fact must determine, on a pure comparative-causation basis, the percent of the injuries proximately caused by the assumption of risk or the unforeseeable misuse and the percent proximately caused by the unrea-

2. Our comparative-negligence law, Section 9–10–07, N.D.C.C., does not include any express statement making it applicable in a strict products-liability action or any action other than one "to recover damages for negligence." Consequently, in the absence of any other legislative expression on the subject, we believe that the decision whether or not to apply comparative-negligence principles in a products-liability action is a matter for this court to determine in its role of interpreting and developing products-liability actions under *Restatement (Second) Torts,* § 402A, without regard to Section 9–10–07, N.D. C.C.

In *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979), we recognized that our comparative-negligence law under Section 9–10–07, N.D.C.C., enacted by the North Dakota Legislature in 1973, was derived from the Minnesota comparative-negligence statute enacted in 1969 which, in turn, was based upon Wisconsin's statute. We stated in *Bartels, supra,* that we would presume that our Legislature adopted our comparative-negligence law with the interpretations placed upon the Wisconsin and Minnesota comparative-negligence laws at that time by the Minne-

sota and Wisconsin Supreme Courts, respectively. Although Minnesota and Wisconsin, using different rationales, have chosen to use comparative-negligence principles in a products-liability action under *Restatement (Second) Torts,* § 402A [See *Busch v. Busch Construction, Inc.,* 262 N.W.2d 377 (Minn.1977); *Powers v. Hunt-Wesson Foods, Inc.,* 64 Wis.2d 532, 219 N.W.2d 393 (1974)], we are unpersuaded that their approach of using negligence terminology and principles in this context is a proper approach to follow.

We do not believe that *Bartels, supra,* requires us to follow either Minnesota's or Wisconsin's approach in this regard, because at the time our comparative-negligence law was enacted in 1973 this court had not expressly adopted a cause of action in products liability under *Restatement (Second) Torts,* § 402A. In addition, *Bartels, supra,* does not require us to follow Wisconsin's or Minnesota's approach on this matter because this issue involves primarily our interpretation and development of products-liability actions under *Restatement (Second) Torts,* § 402A, which only tangentially involves a consideration of comparative-negligence principles.

sonably dangerous defect in the product, and the plaintiff's recovery must be reduced by an amount proportionate to the damage caused by the misuse or assumption of risk.

■ Manufacturers asserts that because the jury found Kathleen's negligence 50 percent of the proximate cause of her injuries, one must infer that the jury determined that Kathleen already knew of the dangerous propensities of nylon rope that a warning label might have revealed and, consequently, even if the jury had been instructed on a products-liability theory it would not have awarded the Mauchs any recovery under that theory. We refuse to speculate as to what the jurors might have ultimately determined if they had been properly instructed on the Mauchs' products-liability theory. We hold that the district court's failure to instruct the jury on the products-liability claim constituted prejudicial and reversible error.

Because the Mauchs' negligence cause of action has been fully litigated and presented to the jury under proper instructions, we conclude that there is no reason to retry the negligence cause of action or to disturb the verdict with respect to it. Having concluded that the Mauchs are entitled to have a jury determine their cause of action under a products-liability theory, we will remand the case for a new trial only on that cause of action.

■ On appeal, Manufacturers has also raised the issue of whether or not the district court erred in denying certain expert witness fees and other costs requested by Manufacturers. The district court awarded Manufacturers costs and expert witness fees in a reduced amount from that requested. In view of our remand, we find it is neither necessary nor appropriate to reach the merits of this issue. Because the Mauchs are entitled to a new trial in this case on their products-liability cause of action, the judgment entered in this case must be vacated in its entirety with the expectation that a new judgment will be entered upon remand and retrial of the case. To what extent, if any, that Manufacturers will be entitled to costs and expert witness fees must be determined anew by the district court, in view of and subsequent to the proceedings on remand.

In accordance with this opinion, the court's order granting the Mauchs a new trial on a negligence theory is reversed; the judgment is reversed; and the case is remanded for a new trial on the Mauchs' products-liability cause of action. Costs on appeal are not awarded to either party.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.

SAND, Justice, specially concurring.

I concurred in and signed the basic opinion. Nevertheless, I am compelled to make additional comment. The impression I received from the basic opinion is that the limitation or constriction placed on contributory negligence applies only to the instant case.

I am satisfied that in a products liability action contributory negligence, as a descriptive term, is negligence even though placed under another heading or title, i.e., "misuse," and is relevant to the resolution of the issue. In some instance it may even be the proximate cause of the injury and damage and needs to be considered depending upon the circumstances of the case.