## NICK BAUER v. GARY KUMMER, A MINOR, BY ARTHUR KUMMER, GUARDIAN AD LITEM, AND ANOTHER. ANNIE FOX v. SAME. NICK BAUER, THIRD-PARTY DEFENDANT.[1]

May 6, 1955.

Nos. 36,521, 36,522.

---

[1]Reported in 70 N. W. (2d) 273.

*Sawyer & Lampe* and *Carroll, Thorson & Anderson,* for appellants.
*Holst, Erickson, Vogel & Richardson,* for respondents.

MATSON, JUSTICE.

In two personal injury actions arising out of the same automobile collision and consolidated for trial, plaintiffs and the third-party defendant appeal from the judgments entered.

On July 21, 1953, an automobile owned by defendant Arthur Kummer and driven by his minor son, defendant Gary Kummer, collided with an automobile owned and driven by plaintiff Nick

Bauer. In addition to Bauer's action against both Kummers, we have another action by Annie Fox, as trustee, to recover damages for the death of Myron Fox who was killed while a passenger in the Bauer car. In the latter action Nick Bauer was joined as a third-party defendant. The two actions were consolidated for trial. Pursuant to specific interrogatories submitted to the jury in the form of a special verdict in each action, the jurors were asked if each driver had been negligent. The jurors answered "yes" as to both drivers. The jurors likewise answered "yes" to questions as to whether the negligence of each driver was a proximate cause of the accident. Upon additional interrogatories the jury further found that plaintiff Nick Bauer's damages were $6,168.35; that the damages of Arthur Kummer to his automobile as a counterclaiming defendant were $1,965 plus other damages of $96; and that those of the plaintiff Annie Fox were $844.55.

Pursuant to the jury's answers to these interrogatories, the court ordered judgment in the first action for defendant Arthur Kummer against plaintiff Nick Bauer for $1,965 and his costs and disbursements. In the second action judgment was ordered for plaintiff Annie Fox against defendants for her damages. Thereafter a motion was made in each case to vacate the verdict and to change the jury's answer to the question of whether Nick Bauer's negligence was a proximate cause of the accident from "yes" to "no" on the ground that the affirmative answers of the jury were due to mistake and inadvertence and did not express the jury's true intent. In the event the foregoing relief was denied, each motion demanded the alternative relief of a new trial. The motions were denied and judgments were entered. Nick Bauer as plaintiff appeals from the judgment in the first action and also as a third-party defendant from the judgment in the second action. Plaintiff Annie Fox also appeals.

■ We are here concerned with an attempted impeachment of the verdicts by affidavits of the jurors and by the affidavit of counsel. Counteraffidavits are also involved. It is the general rule that, after a jury has been discharged, no affidavit of a juror—and no affidavit of any other person relating to what a juror has said—will be received to impeach the verdict where the facts sought to be shown

inhere in the verdict itself, such as the attempt to show that the jurors misapprehended the evidence, or did not understand the charge of the court, or that they misconceived the legal consequences of their factual findings as to negligence and contributory negligence.[2] Hence, no statements by the jurors, either unanimously or individually, can be resorted to for explaining or changing the meaning or legal effect of the verdict.[3]

■ There is, however, a so-called exception to the above rule, which is an exception only in appearance since it involves only an impeachment of the paper recording of the verdict and not of the actual verdict to which the jurors had agreed in their deliberations. This exception permits the use of affidavits to show the true verdict for the limited purpose of proving that it was not correctly entered upon the written paper filed with the court. In other words, affidavits of the jurors may be received to show that, by a clerical error of the jury, the verdict returned in court was not the verdict unanimously agreed upon by them.[4]

■ A sound public policy demands that a verdict be protected not only from clerical error in its recordation but also from attacks whereby it is sought to vacate, change, or explain the actual verdict on grounds which inhere in the jury room deliberations which led to its rendition. A distinct line must at all times be drawn between an impeachment of the *written record* of the verdict and an attempted impeachment of the verdict itself. Untold mischief would result if

[2]State v. Cater, 190 Minn. 485, 252 N. W. 421; Cullen v. City of Minneapolis, 201 Minn. 102, 275 N. W. 414; Collings v. Northwestern Hospital, 202 Minn. 139, 277 N. W. 910; Goetz v. Herzog, 210 Wis. 494, 246 N. W. 573; Schindler v. Mulhair, 132 Neb. 809, 273 N. W. 217; State v. Hill, 239 Iowa 675, 32 N. W. (2d) 398; 14 Dunnell, Dig. (3 ed.) § 7109; 53 Am. Jur., Trial, §§ 1105, 1106; 66 C. J. S., New Trial, § 169; see, 8 Wigmore, Evidence (3 ed.) §§ 2356, 2349.

[3]8 Wigmore, Evidence (3 ed.) § 2356.

[4]Paul v. Pye, 135 Minn. 13, 159 N. W. 1070; see, Brophy v. Milwaukee E. R. & T. Co. 251 Wis. 558, 30 N. W. (2d) 76; Wolfgram v. Town of Schoepke, 123 Wis. 19, 100 N. W. 1054; 14 Dunnell, Dig. (3 ed.) § 7109; 53 Am. Jur., Trial, § 1110; 8 Wigmore, Evidence (3 ed.) § 2355; 66 C. J. S., New Trial, § 169m.

492

the latter were ever permitted.[5] Great caution must therefore be exercised in granting relief for clerical error lest it become a shield behind which to conceal an attack upon the verdict itself. Whether a motion to change a verdict, or in the alternative to vacate it and grant a new trial, calls merely for relief from clerical error in reducing the verdict to writing, or constitutes an attempt to impeach the verdict itself is primarily a question of fact. We are here concerned with that factual issue. Appellants contend that the evidentiary content of the jurors' affidavits points only to a clerical error in the reporting of their verdict and that therefore the court erred in denying their motions. Respondents assert, however, that the evidence—including that contained in counteraffidavits—points not to a mere clerical error but to an actual impeachment of the verdict itself. We turn to the affidavits.

In identical affidavits the 12 jurors stated that through mistake and inadvertence the answer "yes" was written as the answer to the interrogatory: "Was the negligence of plaintiff Nick Bauer a proximate cause of said accident of July 21, 1953?" whereas it was their desire to answer "no" to this interrogatory. Each juror was also of the opinion that all the jurors intended to answer "no" to such interrogatory.

In an additional supporting affidavit plaintiffs' attorney stated that he had talked to one of the jurors by long-distance telephone and that such juror had informed him that she had voted for Nick Bauer to collect the damages which he had sustained and that she had not *intended* to answer, or render any verdict, that the driving of Nick Bauer was in any way responsible for the collision. Affiant further stated that the other eleven jurors told him that they did not intend by their verdict, or by their answer to the interrogatories, to hold that Nick Bauer was in any way responsible for the collision, and further that *they did not understand the meaning and effect of the words "proximate cause"* and that they intended Nick Bauer to recover *the damages "awarded [sic] him."*

---

[5]See, 53 Am. Jur., Trial, § 1105.

The attorney for the defendants filed two counteraffidavits. In one of these affidavits defendants' attorney said that he had spoken to one of the jurors who told him that he was surprised at the result of the verdicts; that he, and the other jurors, had been of the opinion that all the parties would recover the amount of their damages; and that therefore they could not understand why Nick Bauer did not recover his damages. In addition, this juror said that the jurors felt that both Bauer and Kummer were at fault *but that he personally felt that Kummer was more at fault*. Affiant further said the juror led him to understand that the only mistake involved on the part of the jury was a misunderstanding of the legal effect of the verdict and that the juror had no understanding of the meaning of "proximate cause." In the other counteraffidavit the clerk of the district court declared that he read the verdicts of the jury in open court and asked the jurors whether it was their verdict and that they had all answered "yes."

■ We cannot say that the trial court erred. The general rule that upon appeal the evidence must be taken in the light most favorable to the prevailing party also applies to evidence presented by affidavits submitted in support of and in opposition to motions.[6] The evidence sustains the trial judge's finding that the jurors were not in fact seeking to correct a mere clerical error in the *recording* of their verdict *but that they were actually seeking to impeach the verdict itself* on the grounds that they had misunderstood the charge and had misconceived the legal effect of their findings on the issue of contributory negligence.

Significantly the jurors unanimously assented to the verdict as reported and read to them in open court. Furthermore, the trial court could properly consider the fact that the affidavits of the jurors are not explicit as to what was agreed by them in the jury room. Each juror simply stated that it was his *desire* to answer "no" instead of "yes" to the interrogatory. There is no positive statement to exclude the likelihood that this *desire* was not prompted by cir-

[6]Pierce v. Grand Army of the Republic, 220 Minn. 552, 20 N. W. (2d) 489; Cullen v. City of Minneapolis, 201 Minn. 102, 275 N. W. 414; 1 Dunnell, Dig. (3 ed.) § 410.

cumstances arising after the jury had been discharged. A juror further said that it was her *opinion* that other jurors also *intended* to answer "no." In other words, we have an absence of explicit statements that the jurors actually agreed in the courtroom to answer "no" to the interrogatory. It is also significant that the affidavit of appellants' attorney, based on a telephone conversation with one of the jurors, indicates that she thought that the effect of the verdict was that Nick Bauer should receive the amount of the damages which they found he had sustained. This latter affidavit also declares that the jurors did not understand the meaning and effect of the words "proximate cause."

We also have the affidavit of respondents' attorney to the effect that one of the jurors had told him that he was surprised at the result of the verdicts since *they* (the jurors) *were all of the opinion that the parties would recover the amount of the damages they had assessed.*

Taking the evidence in the light most favorable to the trial court's finding, we can only conclude that the evidence reasonably sustains the conclusion that the jurors were seeking to impeach their own verdict upon grounds inherent in the verdict itself, namely, because they misconceived the consequence of their own factual determinations. As already noted, it is clear that the law does not permit the impeachment of a verdict on the ground that the jury misconceived the ultimate legal consequences of its factual determinations.[7]

■ Appellants contend the trial court erred in receiving and considering the counteraffidavit of respondents' attorney. There was no error. The affidavit was admissible for impeachment purposes. Where an issue arises as to whether the affidavit of a juror constitutes an attack upon the verdict itself or merely an attack upon the recordation of the verdict for clerical error, it is competent for the purpose of impeaching such juror to show by counteraffidavit that he has subsequently made statements which are inconsistent with the statements contained in his affidavit. See, Aldrich v. Wetmore, 52 Minn. 164, 53 N. W. 1072. In effect the counteraffidavit was inter-

---

[7]See footnote 2.

posed not to impeach the verdict but to support it.[8] Furthermore, in interlocutory proceedings—such as a motion for a new trial—the usual evidentiary rules are usually relaxed. 1 Wigmore, Evidence (3 ed.) § 4(4).

The judgments of the trial court are affirmed.

Affirmed.

---

[8]See, 53 Am. Jur., Trial, § 1119; 66 C. J. S., New Trial, § 169p.