Warren BIANCHI, Appellant,

v.

Orrin Sylvester NORDBY and City of
Gibbon, Respondents.

No. C2–86–1776.

Supreme Court of Minnesota.

July 2, 1987.

William M. Schade, New Ulm, for appellant.

Jon K. Iverson, Steven M. Phillips, Minneapolis, for respondents.

Douglas Schmidt, Minneapolis, for amicus curiae Minnesota Trial Lawyers Assoc.

SCOTT, Justice.

Plaintiff Warren Bianchi brought this personal injury action against Orrin Nordby and Nordby's employer, the City of Gibbon. The jury returned a verdict finding Bianchi 11⅔% negligent and Nordby 88⅓% negligent. The jury also found that Bianchi would have future damages, including loss of earning capacity, medical expenses, and pain and/or disability.

After the jury was discharged, Bianchi spoke to the foreman, who claimed that the trial court misinterpreted the verdict. Bianchi's counsel then sought to have the jury recalled for questioning, but the trial judge refused. Bianchi moved to have the verdict corrected and, when that motion was denied, moved for judgment notwithstanding the verdict or a new trial. That motion was also denied.

Bianchi appealed to the court of appeals. That court sought certification pursuant to

Rule 118, subd. 3, of the Minnesota Rules of Civil Appellate Procedure and Minnesota Statutes § 480A.10, subd. 2(b)(i) (1986), and we granted certification.

On April 13, 1985, Orrin Sylvester Nordby, a Gibbon police officer, and Warren Patrick Bianchi were involved in a traffic accident. Bianchi brought a personal injury action in Sibley County District Court to recover damages for his injuries. Bianchi submitted both requested jury instructions and a requested special verdict form. The court, however, submitted a special verdict form similar to that found in 4 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CIVIL JIG Form 7 (3d ed. 1986). The jury completed the pertinent part as follows:

1. What sum of money will fairly and adequately compensate Warren Patrick Bianchi for damages up to the date of this verdict for:

    a. Loss of earnings? $ 357.50

    b. Medical expenses? $ 841.65

    c. Pain and/or disability? $9,600.00

2. What sum of money will fairly and adequately compensate Warren Patrick Bianchi for such future damages as are reasonably certain to occur for:

    a. Loss of earning capacity? $5,000.00

    (1) Over what period of time will such loss of earning capacity, if any, occur? ___5___ years

    b. Medical expenses? $1,000.00

    (1) Over what period of time will such medical expenses, if any, occur? ___10___ years

    c. Pain and/or disability? $2,500.00

    (1) Over what period of time will such pain and/or disability, if any, occur? ___10___ years

The trial court read the verdict to the jury and asked, "Ladies and gentlemen of the jury, is this your verdict?" All six jurors responded: "Yes." The court interpreted this to require dividing the amounts by the numbers of years and reducing those amounts to present value.

After receipt of the verdict and notice to counsel, Bianchi had a conversation with the jury foreman. There is disagreement about who initiated the contact, but there is evidence that Bianchi and this juror were previously acquainted. The juror then called Bianchi's counsel, who called the court, suggesting a problem with the verdict and asking the court to call the jurors back for questioning.

The next day, August 14, 1986, Bianchi's counsel called Nordby's counsel and advised him of the potential problem. Later that day Bianchi's counsel, Nordby's counsel, and the trial court discussed the matter. The trial court, however, refused to recall the jury, declining to schedule a *Schwartz* hearing because there was no suggestion of jury misconduct.

After the trial court refused to recall the jury, Bianchi's counsel contacted the jurors and obtained affidavits from them as to a purported recording error. All jurors in their affidavits stated: "That in completing the Special Verdict Form, there was a recording error" and "[t]hat the purpose of this Affidavit is to correct the error." According to these affidavits, the numbers in the answers to question number 2 should have been $25,000, $10,000, and $25,000, respectively.

Bianchi then brought a motion seeking correction of the verdict on the basis of the jurors' affidavits. The trial court denied this motion, concluding:

> that these affidavits, on their face, appear to be the substitution of a new verdict for the one previously rendered and can not succeed because that would amount to impeachment of the original verdict and can not succeed under the guise of the claim that it amounts to a correction of a clerical error.

After his motion to correct the verdict was denied, Bianchi moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Bianchi based this motion on ambiguity and errors of law in the court's instructions to the jury and in the special verdict form. The trial court found no ambiguity or error and denied Bianchi's motion.

Nordby and the City of Gibbon also sought a court order determining collateral sources, discounting future damages to present value, and taxing costs against Bianchi pursuant to the offer of judgment they had made. The trial court considered this motion premature when made because it had not yet reduced the jury verdict to a judgment and later considered itself without jurisdiction because Bianchi had perfected an appeal.

Bianchi appealed from both the September 2, 1986, order denying his motion to correct a clerical error by the jury and the October 7, 1986, order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Two issues are presented by this appeal:

(1) Did the trial court err in its refusal to correct the verdict?

(2) Did the trial court err in its instructions to the jury regarding the special verdict form and in the special verdict form itself?

1. The general rule is that a jury verdict may not be impeached after the jury has been discharged when the facts sought to be shown inhere in the verdict itself. *Bauer v. Kummer*, 244 Minn. 488, 490–91, 70 N.W.2d 273, 275 (1955). The trial court applied this rule and denied Bianchi's motion to correct the verdict.

This court has not allowed juries to impeach their own verdicts when they misunderstand the legal effect of those verdicts. *See, e.g., Gardner v. Germain*, 264 Minn. 61, 117 N.W.2d 759 (1962); *Cullen v. City of Minneapolis*, 201 Minn. 102, 275 N.W. 414 (1937). In *Gardner*, the jury found that the decedent's negligence was a proximate cause of the accident, but thought his estate could still recover damages. When the jurors discovered that this was not the case, they sought to change one of their answers, claiming they did not understand "proximate cause." This court agreed that the verdict should not be changed because "of the jury's misunderstanding the legal effect to be given a verdict which they intended to execute." *Gardner*, 264 Minn. at 65, 117 N.W.2d at 762. Similarly, in *Cullen*, the jury returned two verdicts, one against each joint tortfeasor. Then, after discharge, the jurors submitted affidavits saying they intended that the plaintiff recover the sum of the two verdicts. This court stated that "giving to the affidavits the interpretation most favorable to plaintiff, we do not think that they establish any clerical error or mistake but only a misconception on the part of the jury as to the legal effect of the verdicts which they actually agreed on and returned." *Cullen*, 201 Minn. at 105, 275 N.W. at 415.

Juries may, however, impeach the written record of the verdict. *See, e.g., Paul v. Pye*, 135 Minn. 13, 159 N.W. 1070 (1916). In *Paul*, the jurors mistakenly signed the wrong verdict form and this court held "that 'a unanimous error of the jury in delivering the verdict as already unanimously agreed on in the jury room' may be shown by the affidavits of the jurors themselves as a basis for application for relief by ordering a new trial." *Id.* at 15, 159 N.W. at 1071 (citation omitted); *see also Bauer*, 244 Minn. at 491, 70 N.W.2d at 275–76 ("affidavits of the jurors may be received to show that, by a clerical error of the jury, the verdict returned in court was not the verdict unanimously agreed upon by them"). This court has stressed, however, that "[a] distinct line must at all times be drawn between an impeachment of the *written record* of the verdict and an attempted impeachment of the verdict itself." *Id.*, 70 N.W.2d at 276 (emphasis in original).

"Whether a motion to change a verdict, or in the alternative to vacate it and grant a new trial, calls merely for relief from clerical error in reducing the verdict to writing, or constitutes an attempt to impeach the verdict itself is primarily a question of fact." *Id.* 244 Minn. at 492, 70 N.W.2d at 276. When the trial court determined this factual question, it had before it the identical affidavits of all six jurors, and that court concluded:

> [T]hese affidavits, on their face, appear to be a substitution of a new verdict for the one previously rendered and can not succeed because that would amount to impeachment of the original verdict and can not succeed under the guise of the claim that it amounts to correction of a clerical error."

Bianchi's counsel requested, at least twice, that the trial court recall the jurors and question them regarding the verdict, but the trial court declined to do so. The trial court stated that "unless there is some evidence of wrong doing, that once they are discharged, this Court has no authority to reconvene that jury." Bianchi argues that the trial court could, and indeed should, have recalled the jury for questioning.

This court, however, has referred to "clerical error which can be corrected through a *Schwartz* hearing" and distinguished this from a situation in which jurors are attempting to impeach their verdict. *Zimmerman v. Witte Transp. Co.*, 259 N.W.2d 260, 264 (Minn.1977). This suggests that a *Schwartz* type hearing is permissible to correct clerical error, but that the trial court must first determine whether there might have been clerical error or whether the jury is attempting to impeach its own verdict.

■ Both Bianchi and the trial court are concerned with whether or not the proceeding would be a *Schwartz* hearing. When it denied Bianchi's motion to correct the verdict, the trial court appeared to rely on two court of appeals cases that denied the movant relief when the *Schwartz* hearing procedure was not followed. Citing *Miley v.*

*Grabill,* 392 N.W.2d 52 (Minn.App.1986), and *Arney v. Helbig,* 383 N.W.2d 4 (Minn. App.1986), the trial court stated "that those two cases mandate a refusal by this Court to grant the plaintiff the relief requested." The problem with this analysis is that the trial court had already concluded that this was not a *Schwartz* hearing situation before Bianchi's counsel did those things which the trial court determined violated *Schwartz* hearing procedures. We therefore find no evidence of attorney misconduct in this case.

■ Here, Bianchi's attorney requested a hearing, which was refused by the trial judge, before contacting the other jurors and obtaining their affidavits. The granting of a *Schwartz* hearing is within the discretion of the trial courts, but they are encouraged to be liberal in granting such hearings. *Zimmerman,* 259 N.W.2d at 262–63. We have stated that "trial courts should use their discretion and good judgment to prevent the necessity of such actions [interrogating a juror or telephoning him for the purpose of gathering evidence for a request for a *Schwartz* hearing] and should be liberal in granting a hearing." *Olberg v. Minneapolis Gas Co.,* 291 Minn. 334, 343, 191 N.W.2d 418, 424–25 (1971). Here, the trial court could have recalled the jurors for questioning if he believed there might have been a clerical error, but he did not abuse his discretion by not doing so.

2. Bianchi also argues that both the special verdict form and the court's instructions with respect to that form were ambiguous. He claims that if his proposed form had been used, this ambiguity would have been avoided. The court's form had two blanks for each possible type of future damage, one for the sum of money and one for the period of time. Bianchi's proposed form, on the other hand, had 51 blanks for each type, allowing the jury to specify how much future damage would occur in each year. The trial court rejected Bianchi's proposed special verdict form "as being completely unrealistic in its application and unnecessarily cumbersome in its execution."

Bianchi contends that the form used is ambiguous because the jurors thought the dollars were to be multiplied by the years,

and the court thought the dollars were to be divided by the years. The trial court stated:

> You should compute the amount of such [future] damages in each category and determine over what period of time such future damages, if any, will occur. In doing so, you should enter the monetary amount, based on the value of today's dollar without any deduction for the interest earning capacity of the money in the future or any adjustment for inflation. You are specifically instructed that any adjustments for discount to present value, inflation, or other similar economic factors will be made by the Court to the extent required by law.

What is required of jury instructions "is that the charge as a whole convey a clear and correct understanding of the law of the case. * * * Considerable latitude must be allowed the trial court in the language used so long as the substance of the law is correctly stated." *Barnes v. Northwest Airlines*, 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951). More recently, this court has stated that reversal will not follow if a party simply would have preferred other language "provided the court's instruction appropriately stated the law." *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986).

Thus, the question becomes whether the instructions were erroneous. Bianchi and, especially, the Minnesota Trial Lawyers Association (MTLA), amicus curiae, argue that the court erred in interpreting Minn. Stat. § 604.07 to require the court to do the discounting. Bianchi also claims that even if the judge is to do the discounting, the instructions and the special verdict form here do not contain sufficient information to allow him to do so. MTLA also claims that, no matter who does the discounting, the statute, Minn.Stat. § 604.07 (1986), is unconstitutional, but properly recognizes that that issue is not before the court. That statute provides in part:

> Subd. 2. **Discount required.** In all actions seeking damages for personal injury, wrongful death, or loss of means of support, awards of all future damages, including economic, noneconomic and intangible loss, reasonably certain to occur must be discounted to present value as provided in this section.

> Subd. 3. **Future damages; evidence.** The amount of all future damages, including economic, noneconomic and intangible loss reasonably certain to occur, must be ascertained at the time of trial without reference to projected inflationary or noninflationary changes. Evidence of noninflationary changes in earnings or earning capacity that are reasonably certain to occur are admissible, but this evidence is limited to the present value of the future changes without regard to inflationary changes. Projected increases in earnings or earning capacity dependent upon general economic statistics are not admissible.

> Subd. 4. **Discount rate.** The award calculated under subdivision 3 must be reduced to present value at the time of trial by application of a discount rate equal to:

> (1) the average rate of interest on judgments under section 549.09 for the five calendar years immediately preceding the commencement of trial, rounded to the nearest one-tenth, less

> (2) the average increase in the Consumer Price Index for all Urban Consumers, all items, as published by the United States Department of Labor, Bureau of Labor Statistics, rounded to the nearest one-tenth, for the same five-year period. If the Labor Department statistics are not published by the time of trial, the court shall employ the average increase over the most recent five-year period available in the published statistics.

> In no instance may the discount rate fall below two percent or rise above six percent.

Minn.Stat. § 604.07, subd. 2, 3, 4 (1986).

■ Nordby and the Minnesota Defense Lawyers Association (MDLA) argue that the court, not the jury, is to perform the discounting required by subdivision 4. They base this argument on the following factors: that the statute requires that the award be made "without reference to projected inflationary or noninflationary changes"; that the judge could discount the "award" before entering judgment; and that subdivision 4(2) uses the phrase "the court shall employ." *See also* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice*,

CIVIL JIG 162 (3d ed. 1986). MTLA, on the other hand, bases its argument that the jury should do the discounting on the following factors: the difficulty of providing the court with sufficient information to accurately discount the award; the statutory language "at time of trial"; the legislative history of Minn.Stat. § 604.07; and prior common law practice. Both sides are correct in that the statute gives little guidance, but MDLA's argument based on the language "the court shall employ" is persuasive.

■ Here, Bianchi presented no evidence to support the detailed, year-by-year, special verdict form he submitted. A different verdict form may have been appropriate, *see* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice*, CIVIL JIG Form 7, comment, to provide the court with the information necessary to do the discounting if there were evidence to support it. The form used may have been clearer if the word "total" had been inserted before each category of future damages, but the form as used was not ambiguous.

The decisions of the Sibley County District Court are affirmed, and this matter is remanded for entry of judgment.

SIMONETT, J., concurs specially.

SIMONETT, Justice (concurring specially).

I agree with what has been written, but would like to add that I believe it will be a rare case where credible evidence is produced to segregate quantums of future damages for each year into the future. Pain and suffering and similar kinds of future damages seldom lend themselves to per annum quantification any more than to per diem quantification. *See Ahlstrom v. Minneapolis, St. P. & Sault Ste. Marie R. Co.*, 244 Minn. 1, 29–30, 68 N.W.2d 873, 891 (1955) (fragmenting damages over a person's life expectancy, though illuminating, may be misleading). This is not to deny the reality of future damages, nor the need for fair and adequate awards; but it needs to be recognized that the law, in projecting the future, necessarily deals with reasonable approximations. Attempts to refine these approximations in a search for absolute accuracy leads instead to artificiality.

I appreciate the difficulty for the trial bar to accommodate the new tort legislation, but my concern is that if verdict forms become esoteric, we may lose the good will and interest of jurors. We should ask jurors to answer understandable ultimate fact issues, and the shorter and simpler the verdict, the better.