Mary ZURN, Appellant,

v.

Gordon HUNT, d/b/a Hunt's Hereford
Farm, Respondent.

No. C0–86–2005.

Court of Appeals of Minnesota.

July 7, 1987.

Lynn J. Hummel, Benshoof, Hummel,
Sinclair, Schurman, Pearson, Evans &
Hunt, P.A., Detroit Lakes, for appellant.

Kurt J. Marben, Charlson & Marben,
P.A., Thief River Falls, for respondent.

Heard, considered and decided by
SEDGWICK, P.J., and PARKER and
NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Mary Zurn appeals the trial court's deni-
al of her motions for judgment notwith-

standing the verdict (JNOV) or a new trial in this personal injury case. The jury, by special verdict, found respondent Gordon Hunt at fault and Zurn not at fault, but found that Hunt's fault was not a direct cause of Zurn's injuries. Hunt seeks review of the trial court's refusal to instruct the jury on primary assumption of risk and negligence as a matter of law. We affirm.

## FACTS

Appellant Mary Zurn attended a horse auction at the Mahnomen Sales Barn at Mahnomen, Minnesota, on August 25, 1985, and purchased a horse from respondent Gordon Hunt. The horse, named Lonsum Tony, was a three-year-old Appaloosa. It was trained by Hunt's grandson, Brian, who had professional training and had broken over 400 horses. Brian Hunt claimed to have had no problems breaking Lonsum Tony and asserted that, at least for him, the horse was gentle and easy to ride.

At the auction the horse appeared well-behaved; the rider was able to rein the horse, back it up, take off its saddle, pick up its feet and crawl under it. After observing the rider and the horse, Zurn purchased the animal for $260 and transported it to her home.

The next day Zurn rode Lonsum Tony for the first time. She was at the time 28 years old and had been riding horses since the seventh grade. Before mounting the horse, she brushed him and then walked him around the yard with the saddle and bridle on. She then mounted and, after they had ridden about two-tenths of a mile without incident, the horse suddenly bucked several times, causing the saddle to slip and Zurn to fall to the ground. She then remounted the horse and rode it home.

When Zurn returned home she telephoned Gordon Hunt and asked about the horse's history. Hunt told Zurn for the first time that, about two weeks before the sale, he too had been thrown from the horse, rendering him unconscious and requiring stitches to his head. Brian Hunt subsequently testified that it is difficult for an amateur rider to change a horse's behavior once it starts throwing its riders.

After learning of Gordon Hunt's earlier accident, Zurn again attempted to ride Lonsum Tony, on September 2, 1985. This time, Zurn's husband rode another horse beside her. After brushing and petting the horse and walking with it for over a mile, Zurn attempted to mount. As soon as she did so, she was thrown to the ground, sustaining injuries to her tailbone and damaging two of her teeth. Because of the tailbone injury, she was unable to work and experienced pain, discomfort and headaches.

After this injury, Zurn again called Gordon Hunt. She asked him to buy the horse back, claiming it had been misrepresented to her at the auction as a well-broken, children's horse. In Zurn's opinion, neither adults nor children could ride the horse. When Hunt refused to buy the horse back, Zurn returned it to the sales barn and sold it for $59.

Zurn sued Hunt for damages that allegedly resulted from his negligent failure to disclose to his agents and Zurn the horse's wild and dangerous nature. Hunt answered by saying that Zurn's injuries resulted from her own negligence or from the negligence of others over whom he had no control, and that Zurn assumed the risk of any alleged injuries. The jury received a special verdict form in which it was asked to determine whether Hunt was at fault for failure to warn Zurn of the danger involved and whether this failure was a direct cause of the injuries she sustained. The jury was also asked to determine whether Zurn was negligent in failing to exercise reasonable care. The jury found only Hunt at fault, but also answered that his fault was not a direct cause of Zurn's injuries.

Based on affidavits of Harriet Kivilin (the bailiff at the trial) and Joyce Heisserer (who talked to one of the jurors after the trial), Zurn alleged that during deliberations the jurors became confused about the meaning of "direct cause" in the second interrogatory. They requested clarification from the trial judge, but the bailiff informed them the judge was not available. The jury then continued its deliberations. One juror later reportedly told Heisserer

that the jury thought it had returned a verdict for Zurn. Based on these allegations, Zurn brought motions for JNOV or for a new trial, both of which the trial court denied.

## ISSUES

1. Were the jury's answers to special interrogatories inconsistent because it found Hunt at fault but that his fault was not a direct cause of Zurn's injuries?

2. Did the unavailability of the trial judge when the jurors sought clarification of an interrogatory amount to a prejudicial and irregular proceeding requiring a new trial or a *Schwartz* hearing?

## DISCUSSION

### I

■ Zurn contends that, because of the absence of the judge's clarification, the jury's answers to the special verdict questions indicate confusion and cannot be reconciled and that the trial court should have issued a JNOV or granted a new trial.

In *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967), the supreme court set forth the rule for reconciling answers to interrogatories in special verdicts. The test is whether the answers can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. *Id.* at 155, 152 N.W.2d at 66. Furthermore, in *Nihart v. Kruger*, 291 Minn. 273, 276, 190 N.W.2d 776, 778 (1971), the supreme court noted that it was not its function to determine on what theory the jury arrived at its verdict. In reviewing findings the appellate court must only examine the record to decide whether the verdicts are consistent *on any theory;* only when it is clear that findings cannot be reconciled may the trial court set them aside. *Id.*

It was plausible for the jury to conclude that, although Hunt was at fault, his fault was not a direct cause of Zurn's injuries. This determination could rest on the fact that Zurn rode the horse a second time, *after* she had been informed that the horse had previously thrown Hunt and after having been thrown herself. Any negligence

by Hunt in failing to warn could have been seen to have been terminated through the telephone conversation between Zurn and Hunt after the first fall. Based on these facts, the jury's findings as answered on the special verdict form are not necessarily inconsistent. Therefore, the trial court's denial of the motions for JNOV or a new trial was justified.

### II

The decision whether to grant a new trial rests solely in the trial court's discretion, and it will be reversed only for a clear abuse of that discretion. *Benson v. Rostad*, 384 N.W.2d 190, 194 (Minn.Ct.App. 1986). Minn.R.Civ.P. 59.01(1) provides that a new trial may be granted for "[i]rregularity in the proceedings of the court, referee, jury, or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial."

Zurn contends the trial judge's unavailability when the jury sought clarification of the term "direct cause" amounted to a prejudicial irregularity in the trial proceedings requiring the trial court to grant her motion for a new trial. Very little statutory or case law guidance exists regarding the required availability of the judge while the jury is deliberating. Minn.Stat. § 546.16 (1986) provides that "[w]hile the jury are absent the court may adjourn from time to time, in respect to other business, but it shall be considered open, and for all purposes connected with the cause submitted, until a verdict is rendered or the jury is discharged."

■ While it is regrettable the trial judge was not available to clarify the jurors' questions, his absence did not amount to prejudicial procedure requiring a new trial. Despite the language of the above statute, this court recognizes that unavoidable exigencies sometimes arise due to the long distances between county seats in outstate judicial districts, often making it impossible for judges to remain at the courthouse until a jury completes deliberations. Thus, we hold that unavailability of the

judge alone is not a sufficient ground to require granting a new trial here.

Nor do we believe the facts of this case support the *Schwartz* issue asserted by Zurn. In *Bauer v. Kummer,* 244 Minn. 488, 70 N.W.2d 273 (1955), the supreme court stated the general rule that no affidavit of a juror or any other person relating what a juror said will be received to impeach the verdict when the facts sought to be shown inhere in the verdict itself. *Id.* at 490–91, 70 N.W.2d at 275. The court explicitly held that an attempt to show that the jurors did not understand the charge of the court was such an attack. *Id.* at 491, 70 N.W.2d at 275. The only exception to this general rule against impeachment of the verdict is when the affidavits are used to show that the true verdict was not correctly entered upon the written paper filed with the court. *Id.* In other words, the limited purpose of a *Schwartz* hearing when impeachment of a verdict is sought is to correct a clerical error. *See also Zimmerman v. Witte Transportation Co.,* 259 N.W.2d 260, 264 (Minn.1977) (citing *Brauer*).

■ Zurn does not assert the existence of a clerical error. Rather, her claim that a *Schwartz* hearing should have been held rests on an alleged misunderstanding by the jury of instructions about the term "direct cause" resulting from the judge's unavailability to clarify. Both *Bauer* and *Zimmerman* clearly dictate that such a challenge to a verdict cannot be ground for a *Schwartz* hearing.

■ In addition to affirming the rule in *Bauer, Zimmerman* also reaffirmed the requirement that, at the first suspicion of irregular procedure, the attorney for the non-prevailing party is to bring the matter to the trial court's attention. If this procedure is not followed, the alleged improper procedure may not be raised for the first time in a motion for a new trial. *Zimmerman,* 259 N.W.2d at 262. Zurn did not request a *Schwartz* hearing. Rather, she maintains the trial court itself should have initiated this proceeding sua sponte. This is contrary to the procedures outlined in *Zimmerman.* We hold that the trial court did not abuse its discretion in denying Zurn's motion for a new trial and in failing to hold a *Schwartz* hearing proposed for the first time in post-trial motions.

Our holding makes it unnecessary to address the issues raised by Hunt regarding primary assumption of risk and negligence as a matter of law.

### DECISION

The jury's answers to special interrogatories were not necessarily inconsistent. The trial judge's unavailability did not so prejudice proceedings as to require a new trial or a *Schwartz* hearing.

Affirmed.