*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1396**

State of Minnesota,
Respondent,

vs.

David Lester McHan,
Appellant.

**Filed July 27, 2015
Affirmed
Stauber, Judge**

Fillmore County District Court
File No. 23CR13489

Lori Swanson, Attorney General, Karen Andrews, Assistant Attorney General, St. Paul,
Minnesota; and

Brett Corson, Fillmore County Attorney, Preston, Minnesota (for respondent)

Stan Keillor, Access Justice, PSC, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Rodenberg, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**STAUBER**, Judge

Appellant David Lester McHan challenges his felony domestic assault conviction, arguing jury pool bias, involuntary waiver of his right to a jury trial, improper exclusion of evidence to discredit the victim, erroneous findings of fact, and improper denial of a new trial. We affirm.

## FACTS

Appellant was arrested for striking his adult daughter, E.G., on July 10, 2013, and charged with two counts of felony domestic assault and two counts of gross misdemeanor domestic assault in violation of Minn. Stat. § 609.2242, subds. 2, 4 (2012). At voir dire, P.T., a member of the jury pool, stated that she knew appellant. When the district court asked her about their relationship, she responded, "Well, at the time we owned the newspaper and . . . he also owned a business nearby. There was nothing with that relationship. But we did publish many court reports, and so I guess I've been aware in the past of past history." The district court then asked her, "Is there anything about that knowledge that prevents you from being fair or impartial in this case?" She replied: "I think honestly yes, I would have a problem." She was excused for cause. Appellant's attorney expressed concern that the jury pool was contaminated by P.T.'s statements, but the district court rejected the assertion, stating that P.T. did not reveal specific information or remain in the jury pool "very long."

After the jury was selected but before they were sworn in, the district court adjourned proceedings for an hour. Following the break, the district court accepted

2

appellant's waiver of his jury-trial rights. Before conducting a bench trial, the district court did not rule on a *Spreigl*[1] motion that had been made pretrial. Appellant stipulated to having prior qualified domestic-violence-related convictions[2] as predicate offenses for his current charges.

Evidence at trial established that on July 10, 2013, E.G. had an altercation with appellant that was partially witnessed by two others, W.M., who married appellant soon after the offense, and L.S., appellant's brother. Appellant owns a plumbing and heating business in Spring Valley that operates from a building that has two second-story residential apartments. At the time of the offense, E.G. lived in one upstairs apartment with her husband and two children, and L.S. lived in the other.

E.G. testified that on the morning of July 10 she was in the process of moving out of her appointment when she was accosted by appellant, who was angry about her decision to move. During the encounter, appellant pushed E.G. in the chest as she was loading items into her car. When she returned to her apartment, appellant followed, and they continued to argue. She attempted to pass him to exit the apartment, but he head-butted her three or four times. She then picked up her one-year-old child, thinking that appellant would not assault her if she was carrying a baby, but he pushed her, she fell

---

[1] Evidence of other crimes or bad acts is "*Spreigl* evidence." *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998); *see State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

[2] Appellant admitted to having eight prior convictions for domestic conduct involving his ex-wives in the ten years preceding the current offense. Five of the prior convictions were for felony offenses that included terrorist threats, domestic assault, and violation of a restraining order (two convictions). Three of the prior convictions were for misdemeanors or gross misdemeanors, and included violation of an order for protection, discharge of a dangerous weapon, and domestic assault.

onto a couch with the child pinned beneath her, and appellant got on top of her. She yelled at appellant to move, and when he did so, she got out her phone. Appellant said, "Go ahead. Call the cops. Be like your mom."

E.G. then gathered her children and took them to her car. E.G. diverted appellant's attention by suggesting that he retrieve a gift for her older child from his car, and while he was doing this, she drove away. E.G. went to the home of her mother, M.W., which she considered a safe place because appellant was subject to a restraining order and an order for protection with regard to M.W.

M.W. calmed E.G. down and later called police. Photos of bruising on E.G.'s arm were introduced at trial; there was no physical evidence of injury from the head-butting, but E.G. testified that she was told by medical staff that she "had a closed-head injury and a neck strain."

W.M. and L.S. both testified for the defense. W.M. stated that she heard "faint talking" between appellant and E.G. but did not hear any "loud noises or arguing." L.S. testified that he was leaving his apartment and heard appellant and E.G. "arguing a little bit," so he looked in the apartment door. He testified that he saw his brother go in and leave the apartment two to three minutes later, and he did not see appellant assault E.G. during that time. Appellant did not testify.

After the district court adjudicated appellant guilty of all four charged offenses, appellant moved for a mistrial in the interests of justice and for irregularity in the proceedings, arguing that the district court should have dismissed the jury pool after P.T. alluded to his criminal history at voir dire, and that due to the taint of the jury pool from

4

P.T.'s comments he was forced to choose between being tried before a biased jury or proceeding to a court trial. He also argued that he should receive a new trial due to the newly discovered evidence that E.G. lied in her testimony about L.S. not witnessing the dispute. The district court denied the motion, rejecting the credibility of the person who provided the purported newly discovered evidence, and finding that "[t]he jury was not tainted and dismissal of the jury pool was not warranted in this case. [P.T.] made no reference to 'criminal history' of [appellant]. Further, [P.T.] was immediately released from service. Thereafter, both parties finished voir dire, used preemptory challenges and a jury was selected." The district court concluded that it was "still of the opinion that the jury was not tainted." The district court also determined that appellant voluntarily waived his right to a jury trial. The district court entered a conviction on one of the felony offenses and imposed sentence; this appeal follows.

## D E C I S I O N

### I. Jury bias

Defendants are guaranteed a fair trial under both the Minnesota and United States constitutions. U.S. Const. amend. VI; Minn. Const. art. I, § 6; *State v. Fraga*, ___ N.W.2d ___ ___, 2015 WL 1810487 at *7 (Minn. Apr. 22, 2015). This guarantee does not include a "perfect trial, but rather one that is fair and does not prejudice the substantial rights of the accused." *State v. Marchbanks*, 632 N.W.2d 725, 729 (Minn. App. 2001). "The bias of a single juror violates the defendant's right to a fair trial, because the impartiality of the adjudicator goes to the very integrity of the legal system." *Fraga*, 2015 WL 1810487, at *7 (quotation omitted). When a biased juror serves on a

jury that convicts a defendant, the conviction must be reversed, but only after the defendant shows "that the juror exhibited strong and deep impressions that would prevent her from laying aside her impression or opinion and rendering a fair verdict." *Id.* (quotation omitted). "[T]he disposition of a motion for a mistrial for jury bias is a matter within the [district] court's discretion." *State v. McGath*, 370 N.W.2d 882, 886 (Minn. 1985).

A similar issue was addressed in *Marchbanks*, 632 N.W.2d at 728-29. There, a prospective juror asked the prosecutor whether the defendant was ineligible to possess a firearm because he was a felon, and the prosecutor refused to answer the question. *Id.* at 728. The district court denied the defendant's mistrial motion, and this court affirmed, concluding that the defendant was not prejudiced because the question of whether he was a felon remained unanswered, any prejudice was minimized by the prosecutor moving on to other questions, the juror was peremptorily stricken, and the district court, who "is in the best position to evaluate whether prejudice, if any, warrants a mistrial," "did not believe that the remark was 'going to have any kind of a taint.'" *Id.* at 729.

Even though the jury venire was not sworn when they heard P.T.'s comments about "court reports" and appellant's "past history," appellant essentially argues that the district court abused its discretion by failing to order a mistrial to preserve the impartiality of the jury. On these facts, the possibility of jury prejudice was remote. A reference to "court reports" could have been to a variety of court proceedings, and "past history" suggests only appellant's generic involvement in past litigation, not criminal litigation. These isolated comments were insufficiently distinct to prejudice appellant.

6

Because the underlying facts that supported P.T.'s belief that she could not remain impartial remained unknown, the fact of her being stricken for cause did not cause appellant prejudice. [3] Further, appellant could not meet his burden to show that any of the jurors were actually biased because he waived his right to a jury trial, and the case was tried to the court. The district court judge, who was best situated to evaluate prejudice, did not abuse its discretion by failing to order a mistrial because of the prospective juror's brief remarks. *Cf. Fraga*, 2015 WL 1810487, at *7 (requiring showing of actual bias of juror to mandate reversal of conviction when biased juror was seated on jury).

## II.     Jury-trial waiver

Appellant argues that his waiver of a jury trial was "compelled by the court's refusal to discharge a jury that had been alerted to appellant's criminal record."

Under both the United States and Minnesota Constitutions, a defendant is entitled to a jury trial. U.S. Const. art. III, §2, cl. 3; U.S. Const. amend. VI; Minn. Const. art. 1, §§ 4, 6. A defendant may waive his jury-trial rights, "but the waiver must be knowing, intelligent, and voluntary." *State v. Little*, 851 N.W.2d 878, 882 (Minn. 2014). "Whether a waiver of a constitutional right was knowing, intelligent, and voluntary depends on the facts and circumstances of the case, including the background, experience, and conduct

---

[3] We note that appellant did not ask the district court to voir dire the jury pool or to hold a *Schwartz*-type hearing to further develop the facts. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960) (setting forth procedures for hearings on alleged juror misconduct). If a defendant does not request a *Schwartz* hearing during trial, the district court has no duty to do so sua sponte. *See Zurn v. Hunt*, 409 N.W.2d 8, 11 (Minn. App. 1987); *see also* Minn. R. Crim. P. 26.03, subd. 9.

of the accused." *Id.* The defendant must make the waiver either in writing or in open court. Minn. R. Civ. P. 26.01, subd. 1(2)(a). This court reviews the validity of a jury-trial waiver de novo. *State v. Kuhlmann*, 806 N.W.2d 844, 848-49 (Minn. 2011).

Appellant does not challenge the procedural validity of his jury-trial waiver. He argues that the waiver was not voluntary because he felt he "had no choice but to waive the jury" after the jury became aware of his criminal record. This argument is not supported by the record. The facts do not establish that the jury became aware of appellant's criminal record, only that he had a "past history" that involved "court reports." As stated by respondent, "[Appellant's] subjective beliefs about the jury do not change that he validly waived the right to a jury trial." Further, there was no offer of proof on appellant's reasons for choosing a bench trial rather than a jury trial, and appellant may have had other tactical reasons for choosing a bench trial. *Little*, 851 N.W.2d at 883 (noting that choice of a bench trial could be a trial strategy).

Appellant also argues that his jury-trial waiver was not intelligent because the district court had not ruled on his *Spreigl* motion at the time of the waiver, and this necessarily affected his waiver decision: in a bench trial the factfinder would be fully aware of his prior convictions, but in a jury trial where his prior convictions were suppressed the factfinder would be completely unaware of his prior convictions. This argument rests on several inaccurate assumptions.

The first is that the district court would be prejudiced by awareness of appellant's criminal history. "Our judicial system presumes that judges are capable of setting aside collateral knowledge they possess and are able to approach every aspect of each case with

8

a neutral and objective disposition," and this includes the ability to "disregard extraneous matters." *State v. Dorsey*, 701 N.W.2d 238, 247 (Minn. 2005) (quotation omitted); *see State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) (stating that risk of prejudice from admission of evidence of other bad acts is reduced in a bench trial "because there is comparatively less risk that the district court judge, as compared to a jury of laypersons, would use the evidence for an improper purpose or have his sense of reason overcome by emotion").

The second inaccurate assumption is that the district court was either required to rule on the *Spreigl* motion at pretrial or to rule on the *Spreigl* motion once appellant agreed to a bench trial and to the use of his prior convictions as predicate offenses for the current charges. The district court was under no duty to resolve all pretrial evidentiary rulings before accepting a jury-trial waiver. *See State v. Farah*, 855 N.W.2d 317, 321 (Minn. App. 2014) (stating that the district court may make a definitive ruling to admit or exclude evidence either at or before trial), *review denied* (Minn. Dec. 30, 2014).

Finally, appellant assumes that the prior convictions would have been ruled inadmissible had he agreed to a jury trial, but the supreme court has recognized that in domestic abuse cases, *Spreigl*-type relationship evidence is likely to be admitted. *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004).

Even if the district court erred by admitting the *Spreigl* evidence, such error was harmless unless it substantially influenced the verdict. *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). The evidence of guilt in this case was strong, and included E.G.'s testimony, which was corroborated by her injuries, and the testimony of the responding

9

police officer and E.G.'s mother, who observed her immediately after the offense. For all of these reasons, we reject appellant's arguments challenging his jury-trial waiver.

## III. Evidentiary rulings

A defendant has a constitutional right "to present a complete defense." *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532 (1984)); *see State v. Reese*, 692 N.W.2d 736, 740 (Minn. 2005) (stating that the right to present a complete defense includes the right to call and examine witnesses). But "the accused must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *State v. Richards*, 495 N.W.2d 187, 195 (Minn. 1992) (quotation omitted). During trial, the district court excluded evidence about allegations of domestic abuse between E.G. and her husband, limited the admissibility of evidence pertaining to whether there was a custody dispute between E.G. and appellant over her oldest child, and excluded hearsay evidence from L.S. regarding appellant's statements about E.G. committing welfare fraud. Appellant argues that the district court abused its discretion by making these evidentiary rulings. *See State v. Wenthe*, ___ N.W.2d ___, ___, 2015 WL 3875366 (Minn. June 24, 2015) ("Evidentiary rulings are viewed for an abuse of discretion, even when a constitutional violation is alleged").

Generally, we review evidentiary rulings for harmless error. *State v. Bustos*, 861 N.W.2d 655, 666 (Minn. 2015). For erroneous evidentiary rulings that implicate a constitutional right, the error mandates reversal unless it is "harmless beyond a reasonable doubt," meaning that the error could not have reasonably impacted the jury's

decision. *Id.* A second harmless-error standard applies to non-constitutional evidentiary errors. *State v. Vang*, 774 N.W.2d 566, 576 (Minn. 2009). Under that standard, an error in an evidentiary ruling is harmless unless it "substantially influenced the jury's decision." *Id.* (quotation omitted); *see State v. Juarez*, 572 N.W.2d 286, 291-92 (Minn. 1997) (setting forth the two different harmless-error review standards).

While credibility was important in this case and the evidence at trial established that E.G. was not entirely accurate in all of her statements, the district court found her credible. E.G. had injuries that corroborated her version of the altercation, her overall story remained consistent, and even the two defense witnesses' testimony partly corroborated her testimony, as they both admitted that they heard E.G. and appellant arguing, or at least talking, in her apartment on the date of the offense. Appellant was able to fully cross-examine E.G. and pointed out discrepancies in her testimony, including how long she lived at the apartment, whether she and her father had discussed her oldest child's living with him, and whether the apartment door was open or closed during the argument—all of which called into question her overall credibility.

In addition, in the context of the whole trial, the trial transcript demonstrates that the district court was even-handed in its evidentiary rulings and weighed the proper factors in deciding whether to admit or exclude evidence. Some of the evidence was properly excluded on grounds of relevance, hearsay, or lack of foundation. On the whole, the district court's evidentiary rulings do not demonstrate an abuse of its discretion, and any errors in admission of evidence were harmless under either standard.

**IV.    Findings of fact**

Appellant argues that the district court's order adjudicating appellant guilty was based on clearly erroneous findings of fact. Appellant specifically challenges the district court's findings that: (1) at the time of the motion for a directed verdict, E.G.'s testimony was "not controverted," (2) during trial, E.G.'s testimony about her injuries was "uncontroverted," (3) Deputy Rasmussen's testimony "supported the victim's version of events," (4) W.M.'s testimony did "not conflict with the victim's testimony," and (5) "inconsistent statements" made by E.G. were "immaterial."

Under our appellate standard of review, it is not our role

> to reconcile conflicting evidence. On appeal, a [district] court's findings of fact are given great deference, and shall not be set aside unless clearly erroneous. Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made. If there is reasonable evidence to support the [district] court's findings of fact, a reviewing court should not disturb those findings.

*State v. Gomez*, 721 N.W.2d 871, 883 (Minn. 2006) (quotation omitted). Witness credibility is for the factfinder to determine. *State v. Pippitt*, 645 N.W.2d 87, 94 (Minn. 2002).

Giving the district court's findings "great deference," they are reconcilable with each other and support the ultimate decision reached by the district court. The district court's finding that E.G.'s testimony was "not controverted" at the time of appellant's motion for a directed verdict is not inaccurate—at that time, the defense had not yet put evidence in, and any inconsistencies in E.G.'s testimony could be viewed as minor.

Appellant also argues that E.G.'s testimony about the red mark on her forehead following the head-butting was directly contradicted by Deputy Rasmussen's statement that he saw no bruises on her forehead. The district court could have found that E.G. had a mark on her forehead but that hours later, when she met with Deputy Rasmussen, the mark had disappeared. This is a minor discrepancy in light of the other evidence of E.G.'s injuries. As the district court found, overall, Deputy Rasmussen's testimony supported E.G.'s version of the offense.

The district court also found that W.M.'s testimony "does not conflict with the victim's testimony." This general assessment of the testimony is not inaccurate. Most of the details provided by W.M. were consistent with E.G.'s testimony, including that a discussion took place upstairs between E.G. and appellant on the date and time described by E.G. The district court's findings also took note of W.M.'s testimony that before the date of the offense E.G. and appellant were close, but after that date they were estranged. While E.G. testified that she and appellant had an argument and W.M. testified that she heard only their "faint talking," this inconsistency does not affect the overall consistency of their testimony and can be accounted for by the fact that the district court may not have credited W.M.'s testimony that she could hear "almost everything" that occurred on the second floor of the building from her first-floor location.

Appellant also argues that other inconsistencies in E.G.'s testimony were material, contrary to the district court's finding. On the elements of a domestic assault charge, E.G.'s testimony was consistent, and the district court specifically found that "[t]he testimony given by the victim was clear, consistent on essential elements, and [that she

13

was] a credible witness." Appellant argues that "[t]here is no logic to the district court's analysis of the trial evidence," but this statement and the arguments relating to the district court's findings parse the findings in a hyper-technical manner that makes no effort to harmonize them. The district court's factual findings are not clearly erroneous.

## V. New trial motion

Appellant argues that the district court abused its discretion by failing to grant his motion for a new trial on the grounds of a contaminated jury pool, discovery of new evidence, and insufficiency of evidence. *See State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011) (applying abuse-of-discretion standard to review of new-trial motion). In his appellate brief, appellant addresses only the ground of discovery of new evidence. *See* Minn. R. Crim. P. 26.04, subd. 1(5) (permitting new trial on defendant's motion for "[n]ewly discovered material evidence, which with reasonable diligence could not have been found and produced at the trial").

> [A] defendant's new trial motion based on newly discovered evidence should be granted if: (1) the evidence was not known to him or his counsel at the time of trial; (2) the failure to learn of the new evidence was not because of lack of diligence; (3) the evidence is material and is not impeaching, cumulative, or doubtful; and (4) the evidence is likely to produce an acquittal or more favorable result for the defendant.

*State v. Jenkins*, 782 N.W.2d 211, 237 (Minn. 2010) (quoting *State v. Fort*, 768 N.W.2d 335, 344 (Minn. 2009)). "For the defendant to prove that the new evidence would produce a more favorable result, the defendant must show more than the mere theoretical possibility that the new testimony might alter the jury's verdict." *Fort*, 768 N.W.2d at

345 (quotation omitted). The new evidence must also be admissible in order to effect a change in a trial result. *Id.*

Appellant asserts two items of new evidence that were contained in an affidavit provided by A.M., who is appellant's daughter-in-law and E.G.'s sister-in-law. A.M.'s affidavit states that E.G.'s six-year-old child allegedly told A.M. during a March 15, 2014 sleepover that appellant "didn't touch Mom" on the date of the offense, and that on March 22, 2014, A.M. was at a bar with E.G., who was "drunk," when E.G. "said that she lied in her testimony and that she did see [L.S.] standing outside her apartment door when her dad was up there in her apartment talking to her."

This new evidence fails to provide a basis for granting a new trial. It is unlikely that hearsay testimony from a six-year-old, made to a family member who had strong opinions on the trial issues but who did not testify at trial, would be admitted when the district court did not permit the child herself to testify at trial. Further, the purported drunken admission of E.G. that she did see L.S. standing outside her apartment during the incident with appellant was doubtful because it was purportedly provided during an evening of alcohol consumption, and it was cumulative of L.S.'s testimony on a minor point—whether he was present in E.G.'s apartment or merely in the building during the altercation. *See, e.g., Fort*, 768 N.W.2d at 345 (requiring for successful new trial motion based on material evidence of an alternative perpetrator, the confession of the alternative perpetrator must come forward in a credible manner from a credible source). The district

15

court did not abuse its discretion by denying appellant's motion for a new trial or an evidentiary hearing.

**Affirmed.**